[Crim. No. 4031. Fourth Dist., Div. Two. Dec. 14, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
B. DOUGLAS FAHY et al., Defendants and Appellants.

## COUNSEL

James Walsh, in pro. per., and John R. Sheehan for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and H. Warren Siegel, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KAUFMAN, J.**—This case involves an organization known as "Americans Building Constitutionally" (hereinafter ABC). ABC had as its purpose and function the preparation, presentation and sale of a trust-foundation scheme purportedly designed to save for the creator federal estate taxes, state inheritance taxes and probate costs and expenses.

Defendant Walsh was a consultant to ABC. The ABC plan was based upon his ideas, and he supplied ideas and advice for the preparation of sales promotion material including a film clip that was to be shown to prospective purchasers. Defendants Fahy and Billings solicited and presented the ABC plan in southern California. As a result of the activities of these three defendants an indictment was returned by the Grand Jury of Orange County on July 23, 1968, charging each in count I with conspiracy to commit grand theft by false pretenses (Pen. Code, § 182, subd. 4.) In counts 2 and 3, defendant Fahy was charged with grand theft by false pretenses as a result of representations made to Dr. Jack Hagadorn and Dr. Terrill Root, respectively. Count 2 also named defendant Billings.[1] Following a jury trial, defendant Fahy was found guilty of conspiracy to commit grand theft by false pretenses and two counts of grand theft by false pretenses as charged in counts 1, 2 and 3, respectively; defendant Billings was found guilty of conspiracy to commit grand theft by false pretenses as charged in count 1 and not guilty of the grand theft charged in count 2; and defendant Walsh was found guilty of conspiracy to commit grand theft by false pretenses as charged in count 1 of the indictment.[2] Imposition of sentence was suspended and defendants were placed on probation subject to conditions. Stays of execution of sentence pending appeal were granted, except that defendant Walsh's sentence regarding probation was not stayed. Defendants appeal from the judgment of conviction, the court's denial of their motion for a new trial[3] and the denial of motions made pursuant to Penal Code, sections 995 and 1538.5 prior to trial.

### Sufficiency of the Evidence

 Defendants contend that the evidence was insufficient to support the convictions for grand theft and conspiracy to commit grand theft. Their

---

[1]The indictment also contained 4th, 5th and 6th counts, each charging defendants Fahy and Billings with grand theft by false pretenses.

[2]The court granted a motion to acquit as to counts 4, 5 and 6.

[3]For purposes of an appeal, an order granting probation is a final judgment. (Pen. Code, § 1237.) Although an order denying a motion for new trial is not appealable, it may be reviewed on appeal from the judgment. (*People* v. *Ing,* 65 Cal.2d 603, 614 [55 Cal.Rptr. 902, 422 P.2d 590].)

contention in this regard rests exclusively on the proposition that there is no substantial evidence that the representations made with respect to the trust-foundation plan were false and, therefore, no proof of intent to defraud. This proposition is untenable.

There is no real dispute with respect to the representation made. Hagadorn, Root and other members of the public were told that the ABC trust-foundation plan would be able to avoid estate and inheritance taxation as well as probate costs; that this would be done by the use of two foundations and a trust; that the ABC trust would receive the ABC member's property and would thus be able to avoid taxes; but, that the creator would be able to retain control over his property by appointing members of his family as trustees of the trust or officers of the foundations, and, in turn, having them appoint the creator as managing director with veto power. It was also represented that the ABC concepts and documents were court-approved and had been upheld and sustained by cases decided by the Supreme Court of the United States. In these respects, the representations made were very similar to those made in the case of *People* v. *Lynam*, 261 Cal.App.2d 490, 494, 495 [68 Cal.Rptr. 202] in which this court affirmed convictions for grand theft by false pretenses. In addition, Hagadorn and Root were told that the second foundation was to be created within the trust; that it would have the same or similar purpose as the first foundation, but, that unlike the first foundation, it would not be public, could remain secret and would not have to file reports with the Attorney General.

A large part of the trial was devoted to expert testimony concerning the truth or falsity of the above-mentioned representations. It would serve no useful purpose to set out in detail the testimony of the various expert witnesses. Suffice it to say that the testimony of the experts called by the prosecution was to the effect that the trust-foundation plan would not have the beneficial tax consequences represented and that the second foundation would, like the first, have to file reports with the Attorney General. Also, there was evidence that the representations that the plan was court-tested and had been approved in cases before the United States Supreme Court were false.

Defendants would have us discount the testimony of the experts called by the prosecution, urging that their statements were based on opinion rather than facts, and at most were merely purchased opinions. Expert testimony, however, whatever its shortcomings, has long been recognized as competent evidence in areas where the subject is sufficiently beyond common experience so that the opinion of an expert would assist the trier of fact. (Evid. Code, § 801, subd. (a); *People* v. *Cole,* 47 Cal.2d 99, 103 [301 P.2d 854, 56 A.L.R.2d 1435].)

 As we understand it, defendants also contend that the testimony of the expert witnesses called by the prosecution was legally insufficient to support defendants' convictions because their opinions related to the tax consequences of the unexecuted trust forms supplied by defendants to Doctors Hagadorn and Root. Defendants urged that these forms could have been changed so as to produce the claimed benefits and that the evidence shows that the plan contemplated that clients were to be referred to attorneys who would actually draft the instruments to conform to law.

This contention fails for several reasons. In the first place, the testimony of the expert witnesses called by the prosecution was not limited to the trust forms without change. The witnesses were asked numerous hypothetical questions based on assumed changes in the forms. Indeed, at least one of the experts called by the prosecution conceded that by substantial revision of the trust forms a number of tax benefits could be obtained.

Secondly, we have neither been referred to nor discovered from our own examination of the lengthy transcript any substantial evidence that the defendants intended any substantial changes to be made in the trust forms before their use in the trust-foundation plan. It does appear that the purchase price to be paid by clients to ABC included the cost of preparation of the trust by an ABC-recommended attorney, but there is no evidence that it was intended that the attorney would make changes of such a substantial nature that it would materially change the basic premise of the trust-foundation plan, that is, that the creator could transfer ownership and yet retain control in the manner described above. On the contrary, the only evidence directly on the point appears to be that of Mr. Stephenson who, in testifying about an earlier version of the trust forms, substantially similar to those presented to Doctors Hagadorn and Root, stated that Walsh had told him that he owned this trust form and had it registered and that Walsh and Hayes had told him that this was the trust form to be used in the plan. He further testified that the only changes or additions that were to be made were the insertion of the name of the creator, the names of the family members who were to act as trustees and the addition of a purpose clause consistent with the desires of the individual creator. He also stated, "I was told this was the beginning document and you improved it as you needed to improve it. You altered it, changed it as conditions arose which dictated that type of alteration and change. It was a living entity." In the context in which this statement was made, however, it is clear that the changes contemplated were such as would be required to tailor the trust to the individual needs and desires of the creator, not fundamental changes in the scheme.

Third, and perhaps more fundamentally, the trust and trust form consti-

tuted only one part of the overall trust-foundation scheme that was presented and sold to the victims. The trust forms themselves do not provide that the trustees shall be family members or trusted friends of the creator, nor do they provide for the employment of the creator as the managing officer with veto power. Yet, according to the representations established by the evidence, these were essential elements of the plan. We think it undisputable that under the plan as represented assets held in the trust would be includable in the gross estate of the creator upon his death. (26 U.S.C. §§ 2036 and 2038.) ▆ The only remaining question was whether a charitable deduction in the same amount would be obtained under the scheme. On this point the testimony of the experts was in conflict, and this question was presented to the jury by appropriate instructions as a question of fact for its determination. (See Pen. Code, § 1127b; cf. *Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.,* 33 Cal.2d 89, 93-94 [199 P.2d 302].)

▆ Where the issue on appeal is the sufficiency of the evidence, the test is whether there is any substantial evidence in the record to support the conviction. (*People* v. *Saterfield,* 65 Cal.2d 752, 759 [56 Cal.Rptr. 338, 423 P.2d 266]; *People* v. *Hillery,* 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382].) The evidence must be viewed in the light most favorable to the prosecution, and a conviction will be set aside only where it must be held that sufficient facts could not have been found by the trier of fact to warrant an inference of guilt. (*People* v. *Saterfield, supra; People* v. *Hillery, supra.*) The jury's implied determination that the representations made were false is amply supported by the evidence.

### The Pretrial Motions

Prior to trial, motions were made pursuant to Penal Code, section 995 to set aside the indictment and pursuant to Penal Code, section 1538.5 to suppress certain evidence. These motions were based upon the ground that defendants Fahy and Billings were compelled to give testimony and produce documentary evidence in an Attorney General's investigation made pursuant to section 11180 et seq. of the Government Code. Both motions were denied. ▆▆ While, generally, the denial of such motions is reviewable on appeal from a judgment of conviction (Pen. Code, § 1538.5, subd. (m); *People* v. *Minkowski,* 204 Cal.App.2d 832, 841 [23 Cal.Rptr. 92]), the denial of such motions are not reviewable on appeal when the defendant has not made a part of the record the transcript of proceedings before the grand jury (*People* v. *Chavez,* 208 Cal.App.2d 248, 253 [24 Cal.Rptr. 895]), and when no transcript of the proceedings on the motion to suppress is included in the record on appeal (*Mesaris* v. *Superior Court,* 4 Cal.App.3d 976, 978 [85 Cal.Rptr. 124]; *Thompson*

v. *Superior Court,* 262 Cal.App.2d 98, 103 [68 Cal.Rptr. 530]). The record before us contains neither a transcript of the grand jury proceedings nor a transcript of the section 1538.5 proceedings.

 ██ Moreover, it is apparent that defendants' contentions in this regard are without merit. They contend that, having been compelled to testify and produce documentary evidence in the Attorney General's investigation pursuant to section 11180 et seq. of the Government Code, defendants Fahy and Billings were granted automatic immunity by section 9410 of the Government Code[4] and that if the automatic immunity provided by section 9410 is not applicable, compulsory testimony and production of documentary evidence pursuant to Government Code, section 11180 et seq., constitute a deprivation of the constitutional privilege against self-incrimination and a violation of the constitutional prohibition against unreasonable search and seizure.

Government Code, section 9410 is completely inapplicable. That section pertains to persons sworn and examined before either branch of the Legislature or committee thereof. Immunity is automatically granted so that a witness may not refuse to answer by asserting the privilege against self-incrimination. The Attorney General's office is not a committee of the Legislature. It is part of the executive department of government. In investigations by the Attorney General, the privilege against self-incrimination is available to the witness. (*Brovelli* v. *Superior Court,* 56 Cal.2d 524, 529 [15 Cal.Rptr. 630, 364 P.2d 462].) If a witness feels that his constitutional rights against self-incrimination or unreasonable search and seizure will be violated by a subpoena issued in the course of the Attorney General's investigation, he may refuse to appear, testify or produce the subpoenaed documents without penalty, and the Attorney General must then commence proceedings in accordance with sections 11187 and 11188 of the Government Code in which proceedings these matters may be determined. (*People* v. *West Coast Shows, Inc.,* 10 Cal. App.3d 462, 470 [89 Cal.Rptr. 290].) "Thus, the Government Code provides an opportunity for adjudication of all claimed constitu-

---

[4]Government Code, section 9410 reads in pertinent part: "A person sworn and examined before the Senate or Assembly, or any committee, cannot be held to answer criminally or be subject to any penalty or forfeiture for any fact or act touching which he is required to testify. Any statement made or paper produced by such witness is not competent evidence in any criminal proceeding against the witness. The witness cannot refuse to testify to any fact or to produce any paper touching which he is examined for the reason that his testimony or the production of the paper may tend to disgrace him or render him infamous."

Government Code, section 9400 defines committee as follows: "As used in this chapter, 'committee' means a committee of either the Senate or Assembly, a joint committee of both houses, or, when any of the foregoing committees is authorized to create subcommittees, a subcommittee."

tional and legal rights before one is required to obey the command of a subpoena duces tecum issued for investigative purposes." (*People* v. *West Coast Shows, Inc., supra.*) The constitutionality of this procedure is established. (*People* v. *West Coast Shows, Inc., supra,* at pp. 470-471; cf. *Brovelli* v. *Superior Court, supra,* 56 Cal.2d at p. 529.)

■ From uncontroverted assertions in respondent's brief and from the declaration of Deputy Attorney General Tapper found in the clerk's transcript in connection with defendants' motions under Penal Code, sections 995 and 1538.5, it appears that when defendants Fahy and Billings were subpoenaed by the Attorney General, they appeared but refused to testify or produce the documents subpoenaed; that proceedings were had in the Superior Court of Los Angeles County pursuant to sections 11187 and 11188 of the Government Code; that at said proceedings, although invited to do so, Fahy and Billings declined to assert the privilege against self-incrimination; that an order thereupon issued compelling said defendants to comply with the subpoena; and that, thereafter, defendants unsuccessfully sought writs of prohibition in the Court of Appeal, the California Supreme Court and the federal district court. The determinations in those proceedings have long since become final, and defendants are bound thereby.

The purported appeals from the order denying a new trial are dismissed. The judgment and orders granting probation are affirmed.

Tamura, Acting P. J., and Kerrigan, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 10, 1971.