[Civ. No. 43139. First Dist., Div. One. Oct. 31, 1978.]

RONALD H. KAGAN et al., Plaintiffs and Appellants, v. THOMAS P. KEARNEY, as Registrar of Voters, etc., et al., Defendants and Respondents.

**COUNSEL**

Ronald H. Kagan, in pro. per., and for Plaintiffs and Appellants.

George Agnost, City Attorney, and David Goldman, Deputy City Attorney, for Defendants and Respondents.

## OPINION

KONGSGAARD, J.\*—Plaintiffs appeal from an order denying their motion for a preliminary injunction.

The basic facts are not in dispute. Appellants resided on Seward Street, San Francisco, California, prior to June 1, 1977, and were registered to vote from that address in Precinct No. 6312. On June 1, 1977, appellants moved to Cabrillo Street, San Francisco, California, which is located in Precinct No. 7802.

On July 19, 1977, appellants inquired and were informed by the San Francisco Registrar of Voters that due to their failure to either reregister in their new precinct or execute a notice of change of address by July 4, 1977, they would be ineligible to vote in the August 2, 1977, election.

On July 22, 1977, appellants brought this action for a preliminary injunction to enjoin the Registrar of Voters of the City and County of San Francisco from preventing appellants from voting in the August 2, 1977, election. The trial court denied appellants' motion and this appeal ensued.

### QUESTION PRESENTED

The narrow issue presented is whether appellants, who moved from one voter precinct to another more than 29 days prior to an election, but failed to reregister or otherwise notify the registrar of voters of a change of address as required by law, were entitled to vote in either the new or former precinct. We concur with the trial court's ruling that they were not. We further conclude that the constitutional attack on the statutes relating to the durational residence requirement for voting and the closing date for voter registration, is without merit.

Before discussing the specific narrow issue raised by appellants or the constitutional question we dispose of two preliminary matters.

---

\*Assigned by the Chairperson of the Judicial Council.

First, an action for injunctive relief is an appropriate method of challenging the constitutionality of a statute. (See *Conover* v. *Hall* (1974) 11 Cal.3d 842, 850 [114 Cal.Rptr. 642, 523 P.2d 682]; *Bueneman* v. *City of Santa Barbara* (1937) 8 Cal.2d 405, 407 [65 P.2d 884, 109 A.L.R. 895].) Moreover, an order denying an injunction, including a preliminary injunction, is an appealable order. (Code Civ. Proc., § 904.1, subd. (f); *Socialist Workers etc. Committee* v. *Brown* (1975) 53 Cal.App.3d 879 [125 Cal.Rptr. 915]; *Gosney* v. *State of California* (1970) 10 Cal.App.3d 921, 924 [89 Cal.Rptr. 390].)

Second, we note that the election of August 2, 1977, has taken place, thereby raising the issue of mootness. Obviously this court cannot grant the relief sought by appellants in their original action. However, both appellants and respondents have requested that we retain the case and decide the issue on its merits in view of the importance of the question presented and its effect upon future elections. In *Green* v. *Layton* (1975) 14 Cal.3d 922, 925 [123 Cal.Rptr. 97, 538 P.2d 225], our high court stated: "We have often held that an issue does not become moot merely because it is of no further immediate interest to the party who has raised it. If a matter is of general public interest and is likely to recur in the future, a resolution of the issue is appropriate. (See, e.g., *Knoll* v. *Davidson, supra,* 12 Cal.3d 335, 344; *Zeilenga* v. *Nelson* (1971) 4 Cal.3d 716, 719-720 . . .; *Board of Education* v. *Watson* (1966) 63 Cal.2d 829, 832 . . . .)"

The importance of a resolution of the issue to voters who move from one precinct to another within a county, as well as to the registrar of voters in future elections, is apparent to us. We therefore review the trial court's determination of the issue as well as the constitutionality of certain Elections Code provisions relating to durational residence requirements for voters and the closing date for voter registration.

A brief summary of apposite election laws may be helpful in determining whether the challenged statutes have been constitutionally applied.

The California Constitution provides: "A United States citizen 18 years of age and resident in this state may vote" (art. II, § 2); and, "The Legislature shall define residence and provide for registration and free elections" (art. II, § 3).

Pursuant to the Constitution, the Legislature has provided in the Elections Code a system whereby a citizen who is qualified to vote must

be properly registered before being able to vote. Elections Code section 100[1] provides: "Every person who qualifies under the provisions of Section 1 [since renumbered § 2] of Article II of the Constitution of this state and who complies with the provisions of this code governing the registration of electors is entitled to vote at any election held within the territory within which he resides and the election is held."

Section 17 defines an elector as a United States citizen 18 years or older who is "a resident of an election precinct at least 29 days prior to an election." A voter is defined as an elector "who is registered under the provisions of this code." (§ 18.) "An elector is one who has the qualifications to vote but may not have complied with the legal requirements, that is, the conditions precedent to the exercise of his right to vote." (*People* v. *Darcy* (1943) 59 Cal.App.2d 342, 349 [139 P.2d 118].) In short, only a person qualified as an elector under the Constitution and as a voter under the code may vote. (§ 100.) Under California law appellants were clearly electors but were not voters.

Appellants concede that, although they were registered to vote in Precinct No. 6312, they did not reside there during the 29 days preceding the election. Moreover, although they had resided in Precinct No. 7802 during the 29-day period, they were not registered to vote in that precinct. At the time of the election, therefore, appellants were registered in one precinct but resided in another. It is a ground for challenge that a person does not reside within the precinct at which he is attempting to vote. (§ 14216.) Clearly appellants could have been challenged in either precinct.

Because they moved more than 29 days before the election, appellants, to preserve their voting eligibility, were required to either reregister[2] or execute an address change[3] at least 29 days before the election. (§§ 305,

---

[1]Unless otherwise indicated, all statutory references in this opinion are to the Elections Code.

[2]The appropriate time in which to register to vote and to file transfers of registration from one precinct to another is specified in section 305: "The county clerk or his deputy shall accept affidavits of registration at all times except during the 28 days immediately preceding any election, when registration shall cease for the election as to electors residing in the territory within which the election is to be held. Transfers of registration for an election may be made from one precinct to another precinct in the same county at any time when registration is in progress in the precinct to which the elector seeks to transfer."

[3]Section 315 provides for a simplified method of address change when a voter moves from one precinct to another precinct in the same county. The voter merely signs a form under penalty of perjury stating that he has moved within a county and that he

315.) The move took place on June 1, 1977, and the 29-day deadline was July 4, 1977. Appellants had approximately 34 days (between June 1 and July 4) in which to reregister or execute an address change. They did neither. Therefore appellants were not properly registered to vote in either precinct.

It is also a matter of common knowledge and the subject of considerable publicity around election time that there is a deadline for registration and that a change of address necessitates some kind of contact with the registrar of voters in order to preserve one's right to vote. Moreover, we take judicial notice of the fact that the registrar disseminated election information through press releases to all the media. These press releases informed citizens that July 4, 1977, was the deadline to register for the August 2, 1977, election; that a change of address necessitated that the voter reregister; and that the registrar's office would be open on July 4, 1977, for the purpose of registering voters. Approximately 15,000 citizens registered to vote on or before July 4, 1977.

It is therefore apparent that the inability of appellants to vote in the August 2, 1977, election did not result from any conduct by respondents nor from any confusion created by the statutes, but rather was the result of appellants' failure to comply with simple, straightforward voter registration procedures.

Moreover, section 217 offers no relief to the appellants. Section 217 provides: "A person duly registered as a voter in any precinct in California who removes therefrom within 29 days prior to an election shall, for the purpose of such election, be entitled to vote in the precinct from which the person so removed until the close of the polls on the date of such election."

■ This section is not available to the appellants since they moved more than 29 days prior to the election. Appellants argue on the basis of this provision that an unfair distinction is being made between a registered voter who moves (within the county) within 29 days of an election and such a person who moves more than 29 days before it. While it is true that neither person has an accurate affidavit of registration on election day, the former is permitted to vote because the time has passed in which he could have changed his registration; the latter still has that

understands the notice will be effective only for elections held 29 or more days from the date of the filing.

opportunity. We find no merit in appellants' argument that this distinction is unreasonable.

The purpose of section 217 is to assure that a registered voter who moves from one precinct to another within 29 days of an election is not disenfranchised. Without such a provision a registered voter would be prevented from exercising the right to vote in the event of a move within 29 days of an election. This in no way discriminates against a voter who moved more than 29 days before the election. Such a voter can, by reregistering or executing a change of address as provided by law, be assured of the right to vote. This, appellants failed to do.

■ Faced with clear statutory provisions with which they failed to comply, appellants challenge the statutory voter registration requirements and contend that, since the vote is a fundamental right, respondents must show a compelling governmental interest to support a law which limits the exercise of that right. This contention placed the burden on respondents to show that the 29-day period of residence and registration within one precinct prescribed by California law is necessary to promote a compelling governmental interest. (See *Young* v. *Gnoss* (1972) 7 Cal.3d 18 [101 Cal.Rptr. 533, 496 P.2d 445] [cert. den., 409 U.S. 915 (34 L.Ed.2d 176, 93 S.Ct. 236)].)

In *Young* v. *Gnoss, supra,* the California Supreme Court examined the constitutionality of a 54-day residence requirement. At the time of the *Young* case, California election laws required a voter to reside in the precinct 54 days before an election[4] and had a parallel closing date for registration.[5] In its analysis, the *Young* court made two broad inquiries: (1) Is there a compelling governmental interest which will be promoted by closing voter registration some period of time before an election? and (2) if there is a compelling governmental interest, is 54 days necessary to achieve that goal?

In answer to the first inquiry, the court held that there is a compelling governmental interest. "[T]he county clerks are required to provide local election officials with the original affidavits of registration and printed copies of the indexes of registered voters in each precinct. Such documents are needed, of course, to identify each prospective voter as he presents himself at the polls. Their timely delivery to the precinct officials is therefore essential to the conduct of the election, and constitutes a

---

[4]Former California Constitution, article II, section 1.

[5]Former section 203.

*compelling governmental interest."* (*Young* v. *Gnoss, supra,* 7 Cal.3d at p. 26; italics added.)

In dealing with the second question the court in *Young* struck down the 54-day residence requirement in the state Constitution and the parallel closing date for voter registration prescribed by the Elections Code as a violation of the equal protection clause of the Fourteenth Amendment. The court held that a 54-day period was not necessary to enable election officials to deliver proper documentation to precinct officials in a timely fashion. The *Young* court noted that the United States Supreme Court had recently addressed itself to the issue in *Dunn* v. *Blumstein* (1972) 405 U.S. 330 [31 L.Ed.2d 274, 92 S.Ct. 995]. In *Dunn,* the Supreme Court, reviewing a Tennessee case, concluded that a period of 30 days should be ample to permit a state to complete its administrative tasks prior to elections. Speaking for a unanimous California Supreme Court, Justice Mosk wrote, "We concur in that figure. By parity of reasoning, we hold that in California no durational residence requirement in excess of 30 days may constitutionally be imposed, and general voter registration must remain open at all times except during the 29 days immediately preceding an election." (*Young* v. *Gnoss, supra,* 7 Cal.3d at pp. 27-28.)

In a footnote the *Young* court adverted to other examples of the reasonableness of a 30-day period: "There is additional persuasive authority for the figure of 30 days. As the Supreme Court emphasized in *Dunn,* 'In § 202 of the 1970 Federal Voting Rights Act, Congress outlawed state durational residence requirements for presidential and vice presidential elections, and prohibited the States from closing registration more than 30 days before such elections. 42 U.S.C. § 1973aa-1. In doing so, it made a specific finding that durational residence requirements and more restrictive registration practices do "not bear a reasonable relationship to any compelling State interest in the conduct of presidential elections." 42 U.S.C. § 1973aa-1 (a)(6). We upheld this portion of the Federal Voting Rights Act in *Oregon* v. *Mitchell,* 400 U.S. 112 . . . .' (92 S.Ct. at p. 1004; see also *id.,* at p. 1006, fn. 19.) We note that the precise language of the federal statute (42 U.S.C. § 1973aa-1, subd. (d)) prohibits the states from closing registration 'later than thirty days' before election, thereby requiring that registration remain open to and including the 30th day. Some years earlier a presidential commission recommended that in order to minimize the disenfranchising effect of restrictive registration procedures, voter registration should continue as long as possible and should not end more than 'three or four weeks' before election day. (Report of President's Commission on Registration

and Voting Participation (1963), p. 12.) Finally, petitioners cite statistical authority for the proposition that in 1968 the average closing date of voter registration across the country was 28 days prior to election." (*Young* v. *Gnoss, supra,* 7 Cal.3d at p. 27, fn. 14.)

The *Young* court noted that in suggesting a 30-day period it was only determining the outside limits of residence requirements and parallel closing dates for voter registration which would pass constitutional muster. The specifics were "a matter for the legislative branch of the government." (*Young* v. *Gnoss, supra,* 7 Cal.3d at p. 27.)

Following the *Young* decision the Legislature enacted a new statutory scheme which reduced the durational residence requirement to 29 days in a precinct[6] and the parallel closing date for voter registration to the 29th day[7] preceding any election.

It is well settled that the "legislature has the power to enact reasonable provisions for the purpose of requiring persons who are electors and who desire to vote to show that they have the necessary qualifications, as by requiring registration, or requiring an affidavit or oath as to qualifications, as a condition precedent to the right of such electors to exercise the privilege of voting. Such provisions do not add to the qualifications required of electors, nor abridge the right of voting, but are only reasonable regulations for the purpose of ascertaining who are qualified electors, and to prevent persons who are not such electors from voting. These regulations must be reasonable and must not conflict with the requirements of the constitution." (*Bergevin* v. *Curtz* (1899) 127 Cal. 86, 88 [59 P. 312].)

We conclude that the statutory scheme adopted by the Legislature for the durational residence requirement for voting and the concomitant closing date for voter registration is reasonable and within the constitutional limits prescribed by our Supreme Court in *Young* v. *Gnoss, supra,* 7 Cal.3d 18.

The order denying preliminary injunction is affirmed.

Elkington, Acting P. J., and Newsom, J., concurred.

A petition for a rehearing was denied November 27, 1978, and appellants' petition for a hearing by the Supreme Court was denied December 27, 1978.

---

[6]Section 17.
[7]Section 305.