[Civ. No. 57743. Second Dist., Div. One. Mar. 4, 1980.]

WILLIE R. BARNES, as Commissioner, etc., Plaintiff
and Respondent, v.
PAULA MOLINO, Defendant and Appellant.

**COUNSEL**

Kallen, Grant & Kosnett and James Victor Kosnett for Defendant and Appellant.

George Deukmejian, Attorney General, Arthur C. de Goede, Assistant Attorney General, and David J. Pasternak, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

COLE, J.*—Paula Molino[1] appeals from an order of the superior court which compels her to comply with a subpoena duces tecum issued by the Commissioner of Corporations.[2] The order was issued in connection with an investigation by the commissioner into the affairs of John Sheridan, "John" Mongello, Gold for Tax Dollars, and IME Corporation. The declaration of Charles Tady made a part of the subpoena duces tecum originally called for appellant to produce, for the period January 1, 1978, to September 21, 1978, "Deposit slips, invoices, contracts, Mailing Lists, correspondence and Accounts Receivable Journal relating to any transactions by and between Paula Molino, Doing Business As Telecom, and..." the above named individuals or organizations. The stated purpose was to assist the commissioner in determining whether security interests in gold mines or mining interests were sold in violation of the Corporations Code.

### Statutory Framework

It is helpful to a consideration of the issues to mention first the statutory framework for investigations by heads of executive departments, and to touch briefly on some of the California cases which discuss the scope of such investigations. Government Code section 11180[3] authorizes each department head to make investigations concerning all

---

*Assigned by the Chairperson of the Judicial Council.

[1]In her notice of appeal, appellant states her name as Paula Molino, and the order from which the appeal was taken so styles her. In the petition initiating this proceeding, and in other documents earlier emanating from the Commissioner of Corporations, appellant was described as Paula Molina, and apparently so stated her name in the deposition taken by the Commissioner. No point is made of the discrepancy and we do not mention it further.

[2]The commissioner argues that a request to the trial court nunc pro tunc, to correct any clerical error in its order is appellant's proper remedy. Appellant's claims extend beyond a request to correct clerical error, if error there be, and we see no reason why the matters complained of are not reachable by us.

[3]All further statutory references are to sections of the Government Code, unless otherwise specified.

matters relating to the business activities and subjects under the jurisdiction of the department and to prosecute actions concerning violations. Section 11181 authorizes him to inspect books and records, hear complaints, and to issue subpoenas for the production of papers and the attendance of witnesses. Under section 11182 the department head may delegate the powers to an officer authorized to conduct the investigation or hearing. Provision is made for compelling the attendance of witnesses (§§ 11184-11186), for securing enforcement orders (§§ 11187-11188), and for taking depositions (§§ 11189-11190).

Appellant appeared with counsel at the appointed time for the hearing but, stating that her answers may tend to incriminate her, refused to answer any questions or to produce any documents, beyond giving her name, residence address, birth date, and the fact that she was self-employed. In particular, she refused to answer questions asking whether she knew various named individuals or had heard of or was familiar with IME Corporation or a document headed Gold for Tax Dollars. Pursuant to section 11187, the commissioner then petitioned the superior court setting forth the foregoing and asking for an order, under section 11188. The court held a hearing and issued the order now complained of. Its contents will be set forth below, as we discuss appellant's contentions. The arguments made in this matter are that the order, as signed, was inconsistent with and materially contradictory to the minute order of the court and the comments made by the court at the hearing; that the order violates appellant's constitutional guarantees against unreasonable search and seizure; and that the court erred in not ruling on appellant's claim that she was entitled to assert her privilege against self-incrimination.

We will determine that the order should be modified in one particular instance but that appellant's other contentions are without merit.

### Appealability

Before discussing the merits, another matter requires our attention. Each of the parties has assumed that the order made below under section 11188 is appealable. This assumption is understandable since in other cases involving section 11188 orders, appeals have been taken and decided on their merits. (*Younger* v. *Jensen* (1980) 26 Cal.3d 397 [161 Cal.Rptr. 905, 605 P.2d 813], appeal by Attorney General; *Fielder* v. *Berkeley Properties Co.* (1972) 23 Cal.App.3d 30 [99 Cal.Rptr. 791], appeal by both parties to order; *Board of Medical Quality Assurance* v.

*Gherardini* (1979) 93 Cal.App.3d 669 [156 Cal.Rptr. 55], appeal by person subpoenaed.) In none of these cases, however, nor in any other of which we are aware, has the question of appealability actually been discussed and decided. The parties have been unable to refer us to any such case.

■ An order made under section 11188 is not one of the orders listed as appealable in Code of Civil Procedure section 904.1. It is not a judgment within the definition of Code of Civil Procedure section 577 ("A judgment is the final determination of the rights of the parties in an action or proceeding") because it does not make a final determination of those rights—see, e.g., *Fielder* v. *Berkeley Properties Co., supra*, 23 Cal.App.3d at pages 40 and 46. The order does not fit the description of any of the other matters listed in Code of Civil Procedure section 904.1. We hold that the order is not appealable. We determine it proper, however, that the appeal be treated as a petition for writ of mandate and we will continue to refer to Paula Molino as "appellant." (*Branham* v. *State Farm Mut. Auto. Ins. Co.* (1975) 48 Cal.App.3d 27, 32 [121 Cal.Rptr. 304]—appeal from nonappealable order to arbitrate treated as petition for writ of mandate; see *Estate of Hearst* (1977) 67 Cal.App.3d 777, 781 [136 Cal.Rptr. 821]—appeal from nonappealable probate order treated as certiorari; *People* v. *Cimarusti* (1978) 81 Cal.App.3d 314, 320 [146 Cal.Rptr. 421]—appeal from two nonappealable orders in civil litigation treated as certiorari.)

Accordingly, we proceed on that basis.

### Scope of Investigation

■ With reference to the specific subject matter involved here, the Commissioner of Corporations has authority to conduct investigations to determine whether the corporate securities laws have been violated. (Corp. Code, § 25531.)

The scope of this kind of investigation was delineated by our Supreme Court in *Brovelli* v. *Superior Court* (1961) 56 Cal.2d 524, 529 [15 Cal.Rptr. 630, 364 P.2d 462], as follows: "There is no constitutional objection to a system under which the heads of departments of government may compel the production of evidence for purposes of investigation, without instituting formal proceedings against the one from whom the evidence is sought or filing any charges against him. *As has been said by the United States Supreme Court, the power to make administrative inquiry is not derived from a judicial function but is more*

*analogous to the power of a grand jury, which does not depend on a case or controversy in order to get evidence but can investigate 'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'* [Citation.] Of course, department heads cannot compel the production of evidence in disregard of the privilege against self-incrimination or the constitutional provisions prohibiting unreasonable searches and seizures. It should be pointed out, however, in this connection that where, as here, the records of a corporation are the object of a subpena, the situation differs from one where the private papers of an individual are sought. Neither the corporation nor a person having custody of its records can refuse to produce them on the basis of the privilege against self-incrimination. [Citations.] Insofar as the prohibition against unreasonable searches and seizures can be said to apply at all it requires only that the inquiry be one which the agency demanding production is authorized to make, that the demand be not too indefinite, and that the information sought be reasonably relevant. [Citations.]" (Italics added.)

Appellant contends that, on account of intervening developments in the law of privacy, the 1979 decision of a Court of Appeal in *Board of Medical Quality Assurance* v. *Gherardini* (1979) 93 Cal.App.3d 669 [156 Cal.Rptr. 55], has modified the *Brovelli* rule. It is clear that *Board of Medical Quality Assurance* did hold that considerations of privacy were applicable when an administrative subpena of the type here involved sought to examine medical records of patients not otherwise involved in the administrative inquiry. But *Board of Medical Quality Assurance* in no way affects *Brovelli* otherwise. That is clearly indicated by the fact that the California Supreme Court, as recently as January 31, 1980, has quoted and relied upon the language of *Brovelli* which we have underscored above. (*Younger* v. *Jensen, supra,* 26 Cal. 3d, pp. 404-405.) Thus, while we recognize that in an appropriate case considerations of the right of privacy may play a role in the limitation of a subpoena, we continue to follow the command of the Supreme Court with respect to the "breadth of the power" (*id.* at p. 404) of executive investigation.

### Inconsistency of Order
### With Ruling From Bench

The Tady declaration incorporated in the subpoena duces tecum called for described documents relating to transactions between appellant "doing business as Telecom" and the persons and organizations being investigated, without any attempt to limit those documents to se-

curities transactions. At the hearing held below, the court's announced ruling was that the subpoena should be that as stated in the Tady declaration "excepting only that it is to relate to any transactions pertaining to the relationship between Paula Molion [*sic*], and, then, going on doing business as Telecom, John Sheridan, John Mongello, Gold for Tax Dollars and IME Corporation, *and* any security transactions. . . ." (Italics added.) The court ordered counsel for the commissioner to prepare an order. The minutes of the hearing stated that the order to show cause was "granted with limitations as stated by Court and contained in the notes of the Official Court Reporter."

The order initially prepared by counsel stated, after identifying the documents and the parties "*or* relating to any security transaction." (Italics added.) The court, in its own hand, struck this phrase and inserted instead "including but not limited to any matter concerning, affecting or relating to any security transaction of, for, on behalf of or in connection with the aforesaid person and entities."

It is apparent that there is a discrepancy in language, and possibly in effect, between the statement by the court at the time of the hearing, and the final order as signed. The hearing statement can be taken to mean that the documents to be produced must be related to security transactions between appellant and the other parties and entities—a relationship omitted by the original subpoena duces tecum. The hearing statement could also be taken, by reading the word "and" to mean "something additional," to call for the production of all transactional documents between the appellant and the others plus documents relating to security transactions. That, apparently, is the way the Attorney General read it, for the order prepared by counsel, in using the word "or" would seem to have that effect. The language actually used by the trial court in the signed order clearly was intended to change this. It seems reasonable to think that the trial court intended to limit the required documents to those which had some relationship to securities transactions, because without such a limitation the commissioner's investigation would start to wander far afield of any subject under his jurisdiction. Unfortunately, the court used the phrase "including, but not limited to" and that language seemingly opens up the whole field again.

Using the test of "reasonable relevance" referred to in *Brovelli*, we can see none unless the documents sought or the questions asked relate to security transactions. For instance, plain correspondence between ap-

pellant on the one hand, and one of the other parties or entities on the other hand, having to do with purely personal affairs could not, on the showing made (which we will discuss in more detail in connection with the search and seizure contention) meet the reasonable relevance test. It appears to us that an order, substituting in the present order the words "limited, however," for the phrase "including but not limited to" would fill the bill.

### Search and Seizure Issue

We have already discussed the continued viability of *Brovelli v. Superior Court, supra*, 56 Cal.2d 524, and its holding that there is no constitutional objection to an investigation by the head of a governmental department when (1) the inquiry is one which the agency demanding production is authorized to make, (2) the demand is not too indefinite, and (3) the information sought is reasonably relevant. We have mentioned above that this inquiry is one which the Commissioner of Corporations is authorized to undertake. Given the limitation to documents in some way related to security transactions which we have discussed above, the demand made will not be too indefinite. It remains then, only for us to see if the information sought, so limited, is reasonably relevant.

The declaration of Charles E. Tady in support of the petition below for an order compelling compliance with the subpoena duces tecum recited the following matters: the Department of Corporations had information that I.M.E. Corporation (IME) was a Panama corporation, not qualified to do business in California. No record of the corporation existed with any state agency nor with the City or County of Los Angeles. IME may be soliciting securities within California; it sells interests in a Panamanian gold mine, and certain treasury bills and other governmental security futures. Solicitation is initiated by mailing a "Gold for Tax Dollars" program to persons throughout the country, a copy of this document being an exhibit to appellant's deposition. The return address for the solicitation is that of Telecom, on a Woodland Hills street. When the card is returned by an interested individual, he receives a packet of literature on IME's investment program. This conduct may constitute the sale of securities in California. Since such offers and sales are not qualified in this state, the commissioner needs more information about the solicitation and the program; he needs to discover the names of principals of IME, but does not know for sure where it is located in California or "who" IME really is. The Gold for Tax Dollars program

contains names of persons who have previously been exposed to securities regulation enforcement activity. One person is Gerald Rogers, enjoined by the Securities Exchange Commission and in California from selling unqualified securities in a scheme similar to that of IME. In connection with the investigation of Rogers the Department of Corporations has found associated the name of Paula Molina. The Woodland Hills address is an office leased to Paula Molina as the proprietress of a mail and telephone answering service and she is on file with the county as "dba Telecom." The documents subpoenaed showing transactions between her and IME should show the nature of their California operations, and the identity and location of those involved. The Tady declaration also recites that the declarant visited the Telecom office and talked with one John Sheridan who identified himself as a salesman for IME, and who said that Telecom is IME's United States representative. The declaration also incorporated a declaration of one William Miekle which stated that he used Telecom's offices to conduct IME's business and that Gerald Rogers was frequently there and taught training classes there and assisted sales people in selling tax shelter programs.

■ With this background set out, the third element of the *Brovelli* test—reasonable relevance between the sought after information and the object of the investigation—is apparent. Facts are alleged which more than establish such relevance, clearly indicating that there is cause to believe that unlawful activities are taking place on appellant's business premises. Therefore, we reject the argument that the subpoena duces tecum, or deposition questions aimed at establishing a connection between appellant's Telecom business and the objects of the investigation are an improper invasion of her Fourth Amendment and kindred California right to be free of unreasonable searches and seizures.

### *Privilege Against Incrimination*

■ As noted, appellant claimed her privilege not to incriminate herself by refusing to produce documents or to answer questions. She now argues that the trial court erred in refusing to include in its order a determination of her right to assert the privilege. In this respect, the trial court, in stating what its ruling would be, said in effect that if in further proceedings by the commissioner counsel felt the privilege applied the matter should be taken up at that point and that the court had no way to anticipate what questions would be asked or what documents would be sought. This is a correct ruling.

Whether appellant has a valid claim of privilege to assert (compare the distinction drawn in *Bellis* v. *United States* (1974) 417 U.S. 85 [40 L.Ed.2d 678, 94 S.Ct. 2179], between the business records of a sole proprietress which are privileged (*Bellis* at pp. 87-88 [40 L.Ed.2d at p. 683]), and business records in the possession of an individual as the representative of an organization which is "well organized and structured, and not merely a loose, informal association of individuals" (*Bellis* at p. 93 [40 L.Ed.2d at p. 686]), which are not privileged) can only be determined in the context of a refusal to answer after specific questions have been put. This determination may not be made at the hearing held pursuant to section 11188. (*Fielder* v. *Berkeley Properties Co., supra*, 23 Cal.App.3d 30, 39-40.) While some questions have been put to appellant, and she has declined to answer them, they were asked in a relative vacuum of information. The court at the section 11188 hearing would have no way of knowing how to draw the distinction commanded by *Bellis* and the cases it cites. The statute provides a procedure (§ 11186) under which the superior court can later determine the validity of a claim of privilege if one should be asserted.

And, we note, even if a valid claim of privilege does exist, appellant might still be compelled to answer questions and produce documents, inasmuch as by so doing she would receive a statutory grant of immunity pursuant to Corporations Code section 25531, subdivision (e).

In sum, it is too early for the court to determine whether questions asked of appellant or documents sought to be produced by her may validly be resisted by her claim of the privilege against self-incrimination. In the event no privilege lies, appellant's answers and the production of documents still may be governed by the section last cited.

The appeal is treated as a petition for writ of mandate. A peremptory writ of mandate will issue commanding the trial court to vacate its order of March 19, 1979, and to reissue said order modified with respect to the last paragraph thereof so as (1) to set a new date for compliance and (2) to delete the phrase "including, but not limited to" and to insert in lieu thereof "limited, however, to . . . ."

Lillie, Acting P. J., and Hanson, J., concurred.