[No. A019519. First Dist., Div. Four. Oct. 31, 1985.]

CALIFORNIA RESTAURANT ASSOCIATION,
Plaintiff and Appellant, v.
PATRICK W. HENNING, as State Labor Commissioner, et al.,
Defendants and Respondents.

**COUNSEL**

Lukens, St. Peter & Cooper, M. Armon Cooper and Joan G. Cullin for Plaintiff and Appellant.

Louis P. Giannini and Charlotte D. Danforth for Defendants and Respondents.

OPINION

**SABRAW, J.**—The sole question presented on this appeal is whether Labor Code section 93 is constitutional.

Plaintiff California Restaurant Association is a nonprofit corporation comprised of approximately 2,200 members who own and operate about 8,000 restaurants throughout the state. Defendant Patrick W. Henning (hereinafter referred to as defendant or the Commissioner) is the state Labor Commissioner and chief of the Division of Labor Standards Enforcement in the Department of Industrial Relations. (Lab. Code, §§ 21, 56-57, 79.)[1] The Division of Labor Standards Enforcement is responsible for enforcing orders of the Industrial Welfare Commission and for administering minimum labor standards concerning wages, hours, and working conditions. (§§ 61, 1171 et seq.) The Commissioner is vested with the power to issue subpoenas to compel the attendance of witnesses and the production of books, papers, and records. (§§ 74, 92.)[2] Section 93, the statute at issue here, reads: "Obedience to subpoenas issued by the Labor Commissioner, or his deputies or agents shall be enforced by the courts. It is a misdemeanor to ignore willfully such a subpoena if it calls for an appearance at a distance from the place of service of 100 miles, or less."

Plaintiff commenced this class action by filing a verified complaint for declaratory injunctive relief on behalf of its members and "all owners and operators of restaurants in California who are similarly situated." The gist of the complaint was that an actual controversy had arisen as to the constitutionality of the Commissioner's administrative practice of serving employers with subpoenas and subpoenas duces tecum and threatening criminal prosecution pursuant to section 93 for employer noncompliance. The Commissioner asserted that he was empowered to act without judicial review of the validity of his subpoenas. Plaintiff argued that section 93 is unconstitutional, on its face and as applied, because "it denies the protections against

---

[1]Statutory references are to the Labor Code unless otherwise indicated.

[2]Section 74 provides: "The Chief of the Division of Labor Standards Enforcement, for the purpose of enforcing Industrial Welfare Commission orders and provisions of this code, may issue subpoenas to compel the attendance of witnesses and production of books, papers, and records. Obedience to subpoenas issued by the chief of the division shall be enforced by the courts. [¶] The Chief and enforcement deputies of the Division of Labor Standards Enforcement may administer oaths and examine witnesses under oath for the purpose of enforcing Industrial Welfare Commission orders and provisions of this code."

Section 92 provides: "The Labor Commissioner, his deputies and agents, may issue subpoenas to compel the attendance of witnesses and parties and the production of books, papers and records; administer oaths; examine witnesses under oath; take the verification, acknowledgement, or proof of written instruments; and take depositions and affidavits for the purpose of carrying out the provisions of this code and all laws which the division is to enforce."

unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution and Article I, Section 13 of the California Constitution" which "require that administrative subpoenas be subject to judicial review before a person refusing to comply may incur jeopardy of criminal prosecution or conviction." Plaintiff prayed for a judicial declaration that section 93 was unconstitutional, and an injunction restraining the Commissioner from threatening its use without first obtaining judicial review of subpoenas. In his answer to the complaint, the Commissioner admitted the existence of the controversy as alleged by plaintiff, and all other factual allegations.

The Commissioner and plaintiff each noticed a motion for summary judgment or judgment on the pleadings. The trial court denied plaintiff's motion and entered judgment in favor of the Commissioner by declaring that section 93 was constitutionally valid and fully enforceable on its face and as applied by the commissioner and further declared that section 93 did not deny Fourth Amendment rights.

Plaintiff thereafter filed a timely notice of appeal from the judgment.

■ Before proceeding to the merits of plaintiff's appeal, we first address the threshold question of whether the constitutional issue is properly before us. Obedient to the principle that courts should refrain from reaching constitutional issues unless absolutely unavoidable (see *People* v. *Green* (1980) 27 Cal.3d 1, 50 [164 Cal.Rptr. 1, 609 P.2d 468]; *People* v. *Williams* (1976) 16 Cal.3d 663, 667 [128 Cal.Rptr. 888, 547 P.2d 1000]; *Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 66 [195 P.2d 1]; *Fullerton Union High School Dist.* v. *Riles* (1983) 139 Cal.App.3d 369, 384 [188 Cal.Rptr. 897]), we note that plaintiff's action for declaratory and injunctive relief is an acceptable means of challenging a statute's constitutionality. (*Conover* v. *Hall* (1974) 11 Cal.3d 842, 850 [114 Cal.Rptr. 642, 523 P.2d 682]; *Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 678 [text & fn. 2] [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385]; *Kagan* v. *Kearney* (1978) 85 Cal.App.3d 1010, 1014 [149 Cal.Rptr. 867]; *Lane* v. *City of Redondo Beach* (1975) 49 Cal.App.3d 251, 255 [122 Cal.Rptr. 189].) The trial court obviously treated the matter as justiciable. (Cf. Code Civ. Proc., § 1061; *California Water & Telephone Co.* v. *County of Los Angeles* (1967) 253 Cal.App.2d 16, 23-24 [61 Cal.Rptr. 618].) The Commissioner's admissions of the factual allegations of plaintiff's complaint, particularly the allegations regarding the existence and nature of the dispute, eliminate all questions as to the propriety of declaratory relief. As observed in *Abbott* v. *City of Los Angeles, supra,* "With the pleadings so framed, the only issue before the trial court was the constitutionality of the [statute]." (53 Cal.2d 674 at p. 678.) The only question being one of law, the dispute was appropriate

for resolution by summary judgment. (*Blackwell* v. *Phelps Dodge Corp.* (1984) 157 Cal.App.3d 372, 376 [203 Cal.Rptr. 706]; *Schoderbek* v. *Carlson* (1984) 152 Cal.App.3d 1027, 1032 [199 Cal.Rptr. 874].) We therefore conclude that the issue of the constitutionality of section 93 is properly before us.

■ Plaintiff contends that because "there exists no procedure under the Labor Code for testing the validity of a subpoena issued by the Labor Commissioner prior to incurring jeopardy of misdemeanor," a constitutionally required safeguard, "[s]ection 93 is therefore unconstitutional and unenforceable to the extent that it purports to make refusal to comply with a subpoena issued by the Labor Commissioner punishable as a misdemeanor."

Plaintiff's argument that section 93 is unconstitutional *on its face* requires plaintiff to surmount formidable obstacles before the trial court's judgment may be overturned. The brand of unconstitutionality is not lightly applied. ■ " 'All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears.' " (*In re Dennis M.* (1969) 70 Cal.2d 444, 453 [75 Cal.Rptr. 1, 450 P.2d 296]; accord *In re Ricky H.* (1970) 2 Cal.3d 513, 519 [86 Cal.Rptr. 76, 468 P.2d 204]; *People* v. *Poggi* (1980) 107 Cal.App.3d 581, 589 [165 Cal.Rptr. 758].) ■ The difficulty is compounded when a statute is attacked as being unconstitutional on its face. In pressing such a claim, plaintiff "cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular application of the statute"; instead, plaintiff "must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 180-181 [172 Cal.Rptr. 487, 624 P.2d 1215] [italics deleted]; see *County of Nevada* v. *MacMillen* (1974) 11 Cal.3d 662, 674 [114 Cal.Rptr. 345, 522 P.2d 1345]; 1 Sutherland, Statutory Construction (Sands 4th ed. 1972) § 2.06, p. 22.) With full appreciation of these principles we turn to the merits of plaintiff's contention that section 93 is unconstitutional.

■ The Commissioner's suggestion that subpoenas do not come within the purview of the Fourth Amendment[3] may be dismissed out of hand. The use of subpoenas and subpoenas *duces tecum* as an investigatory tool is an

---

[3]The phrase "Fourth Amendment" is used herein as a shorthand means of referring to the provisions against unreasonable searches and seizures in both the United States and California Constitutions.

accepted and established part of the administrative process. (See generally *Okla. Press Pub. Co.* v. *Walling* (1946) 327 U.S. 186 [90 L.Ed. 614, 66 S.Ct. 494, 166 A.L.R. 531]; LaFave, Search and Seizure (1978) § 4.13; Benton, *Administrative Subpoena Enforcement* (1963) 41 Tex.L.Rev. 874.) Nevertheless, their intrusive nature is obvious. In recognition of this reality, subpoenas have been treated as constructive searches within the meaning of the Fourth Amendment ever since that provision was first judicially construed. (See *See* v. *City of Seattle* (1967) 387 U.S. 541, 545 [18 L.Ed.2d 943, 947, 87 S.Ct. 1737]; *Okla. Press Pub. Co.* v. *Walling, supra,* 327 U.S. 186 at pp. 202-207 [90 L.Ed. 614 at pp. 625-629]; *Hale* v. *Henkel* (1906) 201 U.S. 43, 76-77 [50 L.Ed. 652, 666, 26 S.Ct. 370]; *Boyd* v. *United States* (1886) 116 U.S. 616, 622-635 [29 L.Ed. 746, 748-752, 6 S.Ct. 524].) More than 20 years ago our Supreme Court treated this principle as established beyond dispute. Within the context of a challenge to an administrative subpoena, the court stated: "Of course, department heads cannot compel the production of evidence in disregard of the . . . constitutional provisions prohibiting unreasonable searches and seizures." (*Brovelli* v. *Superior Court* (1961) 56 Cal.2d 524, 529 [15 Cal.Rptr. 630, 364 P.2d 462].) The same is true today. (See *Barnes* v. *Molino* (1980) 103 Cal.App.3d 46, 51-52 [162 Cal.Rptr. 786]; *Board of Medical Quality Assurance* v. *Gherardini* (1979) 93 Cal.App.3d 669, 674-675 [156 Cal.Rptr. 55].)

■ Judicial deference to administrative discretion and expertise is considerable. The general policy of noninterference is evidenced by the manner in which courts evaluate claims that an administrative subpoena infringes upon interests protected by the Fourth Amendment. Such direct attacks are seldom successful. The Fourth Amendment is satisfied if the subpoena (1) relates to an inquiry which the administrative agency is authorized to make; (2) seeks information reasonably relevant to that inquiry; and (3) is not too indefinite. (See *United States* v. *Morton Salt Co.* (1950) 338 U.S. 632, 652-653 [94 L.Ed. 401, 415-416, 70 S.Ct. 357]; *Brovelli* v. *Superior Court, supra,* 56 Cal.2d 524 at p. 529; *Barnes* v. *Molino, supra,* 103 Cal.App.3d 46 at pp. 51-52.)

The Fourth Amendment also requires that there exist a mechanism by which validation, modification, or nullification of the subpoena can be judicially resolved, without penalty, before compliance with the subpoena can be exacted. As observed by the United States Supreme Court in *See* v. *City of Seattle, supra,* 387 U.S. 541 at pages 544-545 [18 L.Ed.2d 943 at pages 946-947]. "It is now settled that, when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome. The agency has the right to conduct all reasonable inspections of such documents

which are contemplated by statute, but it must delimit the confines of a search by designating the needed documents in a formal subpoena. In addition, while the demand to inspect may be issued by the agency in the form of an administrative subpoena, it may not be made and enforced by the inspector in the field, and the subpoenaed party may obtain judicial review of the reasonableness of the demand *prior to suffering penalties for refusing to comply.* [¶] It is these rather minimal limitations on administrative action which we think are *constitutionally required* . . . ." (Italics added, fn. deleted; see *Donovan* v. *Lone Steer, Inc.* (1984) 464 U.S. 408, 415 [78 L.Ed.2d 567, 572-573, 104 S.Ct. 769, 773].) One respected commentator has stated that an opportunity to challenge a subpoena before requiring compliance "is particularly important because it permits the subpoenaed party to obtain a judicial examination of the basis for the seizure and reduces the chances of mistake. . . . A subpoena process which, in effect, does not contain this safeguard violates the Fourth Amendment." (LaFave, Search and Seizure, *op. cit. supra,* § 4.13, p. 209 [text & fn. 106]; *id.* (supp. 1985) p. 90; see also LaFave, *Administrative Searches and the Fourth Amendment,* 1967 Sup.Ct.Rev. 1, 28-31.)

The necessity and wisdom of this safeguard are patent. The availability of a judicial forum for determining the validity of an administrative subpoena can, without detracting from the agency's power to function, protect "the interests of men to be free from officious intermeddling, whether because irrelevant to any lawful purpose or because unauthorized by law, concerning matters which on proper occasion and within lawfully conferred authority of broad limits are subject to public examination in the public interest. Officious examination can be expensive, so much so that it eats up men's substance. It can be time consuming, clogging the processes of business. It can become persecution when carried beyond reason." (*Okla. Press Pub. Co.* v. *Walling, supra,* 327 U.S. 186 at p. 213 [90 L.Ed. 614 at p. 632].)

No such protection restrains the Commissioner. Consider the position of one of plaintiff's members when served with a subpoena issued by the Commissioner. How is he to determine whether the administrative agency is proceeding "unauthorized by law" or is seeking production of materials "irrelevant to any lawful purpose"? If he believes that the subpoena is overbroad, or seeks irrelevant materials, or is otherwise defective, his options are limited. Indeed, he is put to a Hobson's choice: he must either surrender the material with any questions as to the subpoena's validity still unresolved, or he must refuse to comply with the subpoena. The alternatives are stark—relinquishment of a constitutional protection or face criminal prosecution. Moreover, he is confronted with the likelihood that the subpoena will be "enforced by the inspector in the field." (*See* v. *City of*

*Seattle, supra,* 387 U.S. 541 at pp. 544-545 [18 L.Ed.2d 943 at p. 947].) This cannot be.

If the Commissioner's subpoena is overly broad, or seeks production of materials whose pertinency is not yet demonstrated, it is not constitutionally permissible to place under penalty of criminal conviction the subpoenaed party who has refused in good faith to comply unless and until the subpoena's validity has been first judicially established. (See *Reisman* v. *Caplin* (1964) 375 U.S. 440, 446-448 [11 L.Ed.2d 459, 464-465, 84 S.Ct. 508] [text & fn. 8]; *Deutch* v. *United States* (1961) 367 U.S. 456, 467-469 [6 L.Ed.2d 963, 971-972, 81 S.Ct. 1587]; *Scull* v. *Commonwealth of Virginia* (1959) 359 U.S. 344, 353 [3 L.Ed.2d 865, 870-871, 79 S.Ct. 838]; *Watkins* v. *United States* (1957) 354 U.S. 178, 208-209 [1 L.Ed.2d 1273, 1295-1296, 77 S.Ct. 1173]; Jaffe, Judicial Control of Administrative Action (1965) p. 116.) Section 93 is unconstitutional because it provides for strict criminal liability in the event a subpoenaed party refuses to surrender his rights against unreasonable searches and seizures without a prior judicial validation of the subpoena as required by the Fourth Amendment. *(See* v. *City of Seattle, supra,* 387 U.S. 541 at pp. 544-545 [18 L.Ed.2d 943 at p. 947]; *People* v. *James H. Northrup, Inc.* (1980) 106 Misc.2d 440 [432 N.Y.S.2d 45, 46]; cf. *Fielder* v. *Berkeley Properties Co.* (1972) 23 Cal.App.3d 30, 38 [99 Cal.Rptr. 791]; *People* v. *Fahy* (1970) 13 Cal.App.3d 808, 816-817 [92 Cal.Rptr. 451]; *People* v. *West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462, 470 [89 Cal.Rptr. 290].) "The statute thus creates an invitation to random and standardless inquiry . . . . So applied, the statute presents an obvious case of governmental intrusion which is *per se* unreasonable." *(State* v. *Huddleston* (Del.Super. 1980) 412 A.2d 1148, 1157 [8 A.L.R.4th 113].)

The defects from which section 93 suffers are not hypothetical. As identified by plaintiff they are clear and present in every instance in which the Commissioner issues an administrative subpoena. We therefore conclude that section 93 is unconstitutional on its face and as applied. (See *Pacific Legal Foundation* v. *Brown, supra,* 29 Cal.3d 168 at pp. 180-181; *In re Dennis M., supra,* 70 Cal.2d 444 at p. 453.)

The judgment is reversed.

Anderson, P. J., concurred.

**POCHÉ, J.**—I respectfully dissent.

The majority pronounces Labor Code section 93 dead, the cause of death being facial unconstitutionality. My diagnosis is that the statute is alive and

well but suffers from being misunderstood, particularly by my majority colleagues.

The essence of plaintiff's assault—that a party served with a subpoena by the Labor Commissioner is not guaranteed an opportunity for securing some form of judicial review of the subpoena's validity prior to a criminal prosecution for noncompliance—poses grave constitutional questions which may not be dismissed out of hand. However since the contention is that Labor Code section 93 is unconstitutional *on its face* the challenger "must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 180-181 [172 Cal.Rptr. 487, 624 P.2d 1215].) The corollary of this burden is that if this court can conceive of a situation in which section 93 could be applied without entailing an inevitable collision with and transgression of constitutional provisions, the statute will prevail over plaintiff's challenge. (See *People* v. *Harris* (1985) 165 Cal.App.3d 1246, 1256-1257 [212 Cal.Rptr. 216].) Put a little differently, " '[s]tatutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears.' " (*In re Dennis M.* (1969) 70 Cal.2d 444, 453 [75 Cal.Rptr. 1, 450 P.2d 296].)

In its full, two sentence, unedited reality, Labor Code section 93 reads: "Obedience to subpoenas issued by the Labor Commissioner, or his deputies or agents shall be enforced by the courts. It is a misdemeanor to ignore willfully such a subpoena if it calls for an appearance at a distance from the place of service of 100 miles, or less."

The majority's analysis is two part: (1) a subpoenaed party is entitled to judicial review of the validity of the subpoena prior to risking criminal liability; and (2) the Labor Code does not provide such an opportunity and is therefore unconstitutional. In light of the case law so well described in the majority opinion there can be no doubt of the correctness of the first part of that reasoning. However, the second part is to the same degree wrong because it ignores the existence of statutes providing what the majority correctly finds to be constitutionally compelled.

Among the ignored statutes are two sections of the Government Code. When a department head such as the Labor Commissioner issues a subpoena and it is ignored he may petition the superior court pursuant to Government Code section 11187 "for an order compelling the person to attend and testify or produce the papers required by the subpoena before the officer named in the subpoena." Next, the provisions of section 11188 of the Government Code operate including the following: "Upon the filing of the petition the court shall enter an order directing the person to appear before the court at

a specified time and place and then and there show cause why he had not attended or testified or produced the papers as required. A copy of the order shall be served upon him. If it appears to the court that the subpoena was regularly issued by the head of the department, the court shall enter an order that the person appear before the officer named in the subpoena at the time and place fixed in the order and testify or produce the required papers."

By force of Labor Code section 52[1] these provisions of the Government Code which furnish a means of challenging, modifying or vindicating an administrative subpoena "govern and apply to the conduct" of the Labor Commissioner "[e]xcept as otherwise prescribed" in the Labor Code.

The Labor Commissioner concedes that these sections "govern and apply to the conduct" of his department but he seeks to limit their applicability to situations where he has decided to proceed *civilly* against the recalcitrant subpoenaed person. This suggestion of split level applicability flies in the face of the plain wording of Labor Code section 52. To swallow this interpretation—which apparently the majority does—we are required to find the Legislature's intent to be schizophrenic: that in enacting Labor Code sections 52 and 93 and Government Code sections 11187 and 11188 the Legislature meant to insure that procedural due process would be guaranteed to a subpoenaed person who is eventually the subject of civil contempt proceedings but to deny the same due process to a subpoenaed person against whom criminal charges are brought for failing to comply with an identical subpoena. This interpretation of legislative intent—that a subpoenaed party be denied his or her right to due process—I refuse to buy.

Because Labor Code section 93 is in part a penal statute, we are required to construe it in a manner which resolves doubts in favor of a potential defendant. (See *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131, 145-146 [197 Cal.Rptr. 79, 672 P.2d 862]; *People* v. *Davis* (1981) 29 Cal.3d 814, 828 [176 Cal.Rptr. 521, 633 P.2d 186].) Such a construction would be that the criminal provision of section 93 may not be invoked until after the Labor Commissioner has obtained an order of enforcement (pursuant to Gov. Code, §§ 11187-11189) and that order has been disobeyed. This construction allows ample scope for a subpoenaed party to secure a judicial determination of the subpoena's validity prior to compliance, as required by the Fourth Amendment of the United States Constitution, without impairing the Labor Commissioner's legitimate ability or authority to conduct administrative investigations and otherwise discharge his statutory duties.

---

[1]Labor Code section 52 provides: "Except as otherwise prescribed in this code, the provisions of the Government Code relating to departments of the State shall govern and apply to the conduct of the department."

For these reasons I agree with the trial court that Labor Code section 93 is not facially unconstitutional. Quite to the contrary its constitutionality appears clearly, positively and unmistakably.

The trial court also rejected plaintiff's claim that Labor Code section 93 is unconstitutional as applied. In light of the fact that no actual abuse of authority was demonstrated in the trial court there is no need to pass on this issue. Of course, if the construction of Labor Code section 93 suggested in this dissenting opinion were applied, the problem of unconstitutional application would also disappear.

For these reasons I would affirm the judgment.