[No. A056239. First Dist., Div. Four. Jan. 7, 1993.]

THE PEOPLE, Plaintiff and Appellant, v.
NICK PAPPALARDO, Defendant and Respondent.

## Counsel

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Gerald A. Engler, Deputy Attorneys General, for Plaintiff and Appellant.

Jay B. Gaskill, Public Defender, and Leonard Ulfelder, Assistant Public Defender, for Defendant and Respondent.

## Opinion

**PERLEY, J.**—Defendant and respondent Nick Pappalardo (respondent) was charged by plaintiff and appellant People (appellant) with seven counts of grand theft (Pen. Code, § 487, subd. 1), one count of attempted grand theft (Pen. Code, § 487, subd. 1), three counts of selling unregistered securities (Corp. Code, §§ 25110, 25540), three counts of securities fraud (Corp. Code, § 25541), and three counts of misrepresentation regarding the sale of securities (Corp. Code, §§ 25401, 25540).

Respondent moved for dismissal of the charges on the ground that he was entitled to immunity from prosecution pursuant to Corporations Code section 25531, subdivision (e) because he was compelled to give incriminating testimony at an examination before the Department of Corporations. The motion was initially denied. However, it was granted after respondent filed a motion for reconsideration.

Appellant contends: (1) the corporations department commissioner lacked legal authority to compel testimony and thereby activate the statutory immunity, without obtaining a court order; (2) the hearing officer did not compel respondent to testify; (3) count 17 is not transactionally related to the subject of the commissioner's examination. We find merit in the first contention and reverse. Due to our decision we find it unnecessary to discuss appellant's second and third contentions.

## I.   *Facts*

The corporations department examination of respondent was conducted by Joan Kerst. At that time Kerst had passed the bar examination, but for budgetary reasons the department classified her as a graduate legal assistant rather than an attorney. Prior to the examination, the department served respondent with a subpoena and a subpoena duces tecum ordering him to appear as a witness and to bring the listed documents.

Respondent was represented by Attorney Luis Urroz, who had been in practice for approximately 11 years. Urroz was unable to attend the examination so he assigned the case to Joseph Carignan, an attorney who was working out of his office. Carignan had been an attorney for "a little over a year."

Carignan testified that before the date of the examination he had a telephone conversation with Kerst in which he tried to obtain information which could assist him in formulating a strategy. "I was trying to determine whether or not there were any criminal charges against [respondent]. And if there were, it would definitely have a bearing on how restrictive I would be in allowing him to answer the questions, and how tight a rein I would have to keep on him so that he would not respond in a way that was inappropriate to a question which could harm him in a criminal action." Kerst did not provide the information Carignan sought.

Kerst testified that prior to the examination respondent indicated to her that he was being investigated by the "local police, the F.B.I., the Fire Department, OSHA, County O.J.T, Wells Fargo Bank and some other agencies."

Concerning the procedures at the hearing Kerst testified that "[i]f the department desired to compel the answer to a question for which a person had asserted the fifth amendment in the context of [respondent's] examination, . . . [t]he department would go to [the] superior court and request a court order to compel." The parties stipulated that no such court orders were

sought or obtained. Respondent was free to leave the examination at any time. The doors were not locked.

At the outset of the examination Kerst announced that it was part of an investigation to determine whether respondent, Windward Yachts, Vision or any of respondent's ventures violated the California corporate securities laws.

Kerst also advised respondent of his rights. "As is customary in all such examinations as this, we advise the witness of the rights he has, including the right not to answer any question that may tend to incriminate you or subject you to fine, penalty, or forfeiture."

The colloquy which followed the advisement provides a good illustration of the tenor of the entire proceeding. "Q. [by Kerst] Do you understand that right? ¶ A. [by respondent] I do not understand what this meeting is about. ¶ Q. Do you understand the right as I just read it to you? ¶ A. No I do not. ¶ Q. Do you understand that you have the right not to answer any question which you feel may tend to incriminate you or subject you to any fine, penalty or forfeiture? ¶ A. I understand that right."

In accordance with a request by Carignan, Kerst went off the record and commented on the nature of the department's investigation. Kerst then asked questions about respondent's use of other names similar to his given name, vital statistics, address, phone number, employment status, and whether he was familiar with a boating newspaper. Respondent refused to answer any questions on the ground it might incriminate him.

Kerst next asked respondent about his business ventures, the subpoenaed documents, and a conversation he had with her. At one point Kerst stated that respondent "must answer the question." Respondent refused. He still asserted his privilege against self-incrimination but the refusal to answer was now qualified.

"[Respondent]: You'll save everybody a whole lot of time and a whole lot of aggravation if you'll go off the record and let me talk to you straight for a few minutes. . . . My answers are going to be the same all the way down the line unless we go off the record and talk straight for a few minutes."

"[Respondent]: This gal thinks she's got Al Capone by the neck or something, and she's playing goddamned DA or something. ¶ Mr. Carignan: . . . What I'm asking you to do is grant us the courtesy of going off the record for a moment, and we'll answer your questions when we go back on the record."

"Q. [by Kerst] Mr. Pappalardo, we would love to receive any evidence which you would like to provide. ¶ A. I would love to give it to you, but you won't let me do it in a proper manner. ¶ You refuse to talk to me off the record."

Kerst refused to go off the record formally although at one point respondent and Carignan left the examination room together. A short time after they returned Carignan declared: "I'll stipulate that if we go off the record, the discussion that we have off the record would be placed back on the record, but [respondent] and myself at this time would like an opportunity to speak in a more informal manner with you for a moment of your time, and what we would say off the record, we will allow to be put back on the record in essence, rather than verbatim."

Kerst would not go off the record. Carignan and respondent then agreed to answer questions. "Mr. Carignan: You want to just make her happy and do it on the record? ¶ What the heck. ¶ What do we have to lose? ¶ [Respondent]: At this point, I don't know. ¶ Mr. Carignan: Nothing. We both think that your interrogational attitude and manner is just too . . . . ¶ [Respondent]: You're not a nice person." Respondent then answered most of Kerst's questions although he did refuse to answer some questions on the ground of self-incrimination.

## II. *Power to Compel*

■ Appellant contends that respondent's "testimony was not compelled by court order; therefore he is not entitled to transactional immunity." This contention has merit.

The instant case is governed by several statutes. Corporations Code section 25531 provides: "(a) The commissioner in his discretion (1) may make such public or private investigations within or outside of this state as he deems necessary to determine whether any person has violated or is about to violate any provision of this law or any rule or order hereunder or to aid in the enforcement of this law or in the prescribing of rules and forms hereunder. . . .

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(c) For the purpose of any investigation or proceeding under this law, the commissioner or any officer designated by him may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, agreements, or other documents or records which the commissioner

deems relevant or material to the inquiry. [¶] (d) In case of contumacy by, or refusal to obey a subpoena issued to, any person, the superior court, upon application by the commissioner, may issue to the person an order requiring him to appear before the commissioner, or the officer designated by him, there to produce documentary evidence, if so ordered, or to give evidence touching the matter under investigation or in question. Failure to obey the order of the court may be punished by the court as a contempt. [¶] (e) No person is excused from attending and testifying or from producing any document or record before the commissioner, or in obedience to the subpoena of the commissioner or any officer designated by him, or in any proceeding instituted by the commissioner, on the ground that the testimony or evidence (documentary or otherwise) required of him may tend to incriminate him or subject him to a penalty or forfeiture; but no individual may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after validly claiming his privilege against self-incrimination, to testify or produce evidence (documentary or otherwise), except that the individual testifying is not exempt from prosecution and punishment for perjury or contempt committed in testifying."

Government Code section 11180 provides: "The head of each department [of the state of California] may make investigations and prosecute actions concerning: [¶] (a) All matters relating to the business activities and subjects under the jurisdiction of the department. [¶] (b) Violations of any law or rule or order of the department. [¶] (c) Such other matters as may be provided by law."

Government Code section 11181 provides: "In connection with these investigations and actions, the department head may: [¶] (a) Inspect books and records. [¶] (b) Hear complaints. [¶] (c) Administer oaths. [¶] (d) Certify to all official acts. [¶] (e) Issue subpoenas for the attendance of witnesses and the production of papers, books, accounts, documents and testimony in any inquiry, investigation, hearing or proceeding pertinent or material thereto in any part of the state. [¶] (f) Divulge evidence of unlawful activity discovered, pursuant to this article, from records or testimony not otherwise privileged or confidential, to the Attorney General or to any prosecuting attorney who has a responsibility for investigating the unlawful activity discovered, or to any governmental agency responsible for enforcing laws related to the unlawful activity discovered."

Government Code section 11186 provides: "The superior court in the county in which any hearing is held under the direction of the head of a department has jurisdiction to compel the attendance of witnesses, the giving

of testimony and the production of papers, books, accounts and documents as required by any subpoena issued by the head."

Government Code section 11187 provides: "If any witness refuses to attend or testify or produce any papers required by such subpoena the head of the department may petition the superior court in the county in which the hearing is pending for an order compelling the person to attend and testify or produce the papers required by the subpoena before the officer named in the subpoena. [¶] The petition shall set forth that: [¶] (a) Due notice of the time and place of attendance of the person or the production of the papers has been given. [¶] (b) The person has been subpoenaed in the manner prescribed in this article. [¶] (c) He has failed and refused to attend or produce the papers required by subpoena before the officer in the cause or proceeding named in the subpoena, or has refused to answer questions propounded to him in the course of the investigation or hearing."

Government Code section 11188 provides: "Upon the filing of the petition the court shall enter an order directing the person to appear before the court at a specified time and place and then and there show cause why he has not attended or testified or produced the papers as required. A copy of the order shall be served upon him. If it appears to the court that the subpoena was regularly issued by the head of the department, the court shall enter an order that the person appear before the officer named in the subpoena at the time and place fixed in the order and testify or produce the required papers. Upon failure to obey the order, the person shall be dealt with as for contempt of court."

Since there appears to be some overlap between the Government Code and the Corporations Code, we must determine which provisions govern the instant action. ▮ In doing so, we are guided by the "overriding principle" of statutory interpretation that "the individual portions of a statute should be harmonized with each other and the entire statute harmonized with the body of law of which it forms a part." (*United Public Employees* v. *Public Employment Relations Bd.* (1989) 213 Cal.App.3d 1119, 1127 [262 Cal.Rptr. 158].)

▮ Two fairly recent cases, *Barnes* v. *Molino* (1980) 103 Cal.App.3d 46 [162 Cal.Rptr. 786] and *Tom* v. *Schoolhouse Coins, Inc.* (1987) 191 Cal.App.3d 827 [236 Cal.Rptr. 541], sub silentio apply such principle of interpretation to explain how the statutes jointly govern corporation department examinations similar to the one herein and immunity from criminal prosecutions.

After summarizing the Government Code sections authorizing investigations by the Department of Corporations, the *Barnes* court holds that sections 11187 and 11188 of such code provide for "securing enforcement orders." (*Barnes* v. *Molino, supra,* 103 Cal.App.3d at p. 50.) To emphasize the limited role of the examination officer the court adds: "Of course department heads cannot compel the production of evidence in disregard of the privilege against self-incrimination or the constitutional provisions prohibiting unreasonable searches and seizures." (*Id.* at p. 52.) Orders compelling testimony can only be made at a hearing before a superior court, pursuant to Government Code section 11188, where the court can evaluate claims of privilege under the authority of Government Code section 11186. (*Barnes, supra,* at pp. 55-56.) If a valid claim of privilege exists, the court may still compel the witness to answer questions "inasmuch as by doing so she would receive a statutory grant of immunity pursuant to Corporations Code section 25531, subdivision (e)." (*Id.* at p. 56.)

*Tom* holds that "Government Code section 11188 allows judicial enforcement of subpoenas issued by state executive departments" such as the Commissioner of Corporations. (*Tom* v. *Schoolhouse Coins, Inc., supra,* 191 Cal.App.3d at p. 828, fn. 1.) The appeal in *Tom* is from an order of the superior court pursuant to such section "which compels compliance with a subpoena duces tecum issued by the Commissioner of Corporations." (*Id.* at p. 828.) The case also holds that privacy interests imperilled at a corporations department examination are protected by the Government Code. (*Tom, supra,* at p. 830.)

In the trial court respondent relied on *People* v. *Schwarz* (1926) 78 Cal.App. 561, 569-570 [248 P. 990], which held that the Department of Corporations had the power to compel testimony and bring about immunity. However, the opinion discloses that a different statutory scheme was in effect at the time the case arose. The other cases cited by respondent involve different agencies. Even where the statutes governing those agencies resemble the Corporation and Government Code sections involved herein they have not been interpreted in the same manner, probably due to the distinct missions of the various agencies.

Accordingly, in the present case Kerst lacked the power to compel testimony. Thus, since the Department of Corporations did not seek a court order under Government Code sections 11186-11188, or any other section, respondent was not compelled to testify and there was no statutory immunity.

## III. *Disposition*

The order of dismissal is reversed.

Anderson, P. J., and Poché, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 1, 1993. Mosk, J., and Panelli, J., were of the opinion that the petition should be granted.