UNITED STATES of America,
Plaintiff–Appellee,

v.

Mark Roy ANDERSON, Defendant–
Appellant.

No. 94–50521.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1996.

Decided March 29, 1996.

George S. Cardona, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.

Tara Selver, Law Offices of Leonard B. Levine, Los Angeles, California, for defendant-appellant.

Before: NORRIS and WIGGINS, Circuit Judges, ILLSTON, District Judge.*

WIGGINS, Circuit Judge:

Mark Roy Anderson appeals the district court's denial of his motion for a *Kastigar* hearing, in which he argued that his prior testimony and production of documents in a state proceeding could not be used against him in his subsequent federal prosecution. Anderson contends that the prior testimony and production were immunized pursuant to California Corporations Code § 25531(e) or absent immunity, compelled over his fifth amendment objections by a threat of contempt. Thus, he claims the district court erred in failing to hold a *Kastigar* evidentiary hearing, in which the government would have been required to show independent sources for the evidence used in the federal prosecution.

We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM the district court's denial of Anderson's motion for a *Kastigar* hearing.

## I.

In 1986 the California commissioner of corporations ("commissioner") filed a civil action against several corporate entities and individuals, including Anderson, seeking to enjoin the defendants from violating California securities laws. On January 14, 1987, the court issued a preliminary injunction, which confirmed the appointment of a receiver over the corporate entities and Anderson. The preliminary injunction also ordered all defendants to turn over all records, documents, etc. that related to the defendants' assets.[1]

Pursuant to the preliminary injunction, the receiver subpoenaed documents and testimony from Anderson. Anderson asserted his fifth amendment privilege against self-incrimination, refusing to answer most questions at his deposition and refusing to produce documents called for in the subpoena. Consequently, on May 13, 1987, the receiver filed a declaration with the court requesting that the court issue an order to show cause why Anderson should not be held in contempt for violating the court's preliminary injunction order. The court issued the order to show cause on the same day, and set Anderson's appearance for June 4, 1987.

On June 1, 1987, after several phone conversations between counsel, Anderson's attorney wrote the following letter to counsel for the receiver:

This is to confirm our telephone dis[cu]ssions of May 28, 1987 and May 29, 1987. Specifically, this is to confirm that after considering all of the various implications of doing so, Mr. Anderson has agreed to waive his fifth amendment privilege with respect to testimony and production of documents in the above-referenced matter. He is, therefore, willing to produce documents and to submit to his deposition in this matter without asserting the fifth amendment privilege.

Would you please, therefore immediately take the OSC RE: Contempt off-calendar and contact this office to calendar convenient dates for the production and the taking of Mr. Anderson's deposition.

As both Mr. Anderson and I have communicated to you repeatedly in the past, we are anxious to cooperate with the receiver in this matter and to attempt to reach some resolution of it at the earliest possible date. This offer to waive the fifth amendment privilege is made pursuant to that desire.

On June 4, 1987, the parties signed a stipulation in which Anderson agreed to produce all documents and testify in a second deposition; the parties also agreed to take off calendar the hearing on the order to show cause, provided that the order to show cause

---

* Hon. Susan Y. Illston, United States District Judge for the Northern District of California, sitting by designation.

1. At the January 14, 1987 preliminary injunction hearing, Anderson objected that this provision of the preliminary injunction (paragraph E) would require him to waive his fifth amendment privilege against self-incrimination. In response to this objection, the court stated, "Well, I am sure that if there are any records involving Mr. Anderson, when we get into the Fifth Amendment, I will hear that at that time, but I am satisfied that there is nothing wrong with (E), and all of these records should be turned over to the receiver when available."

could be reinstated if Anderson did not comply with the stipulated order. The court signed the stipulated order and it was filed on July 1, 1987.

Subsequently, Anderson was indicted in federal court on multiple counts of mail fraud.[2] Anderson filed a motion for a *Kastigar* hearing, arguing that the government should be required to demonstrate that the information used in the federal prosecution was derived from sources other than his testimony and production in the state proceeding. He asserted that his production of documents and deposition testimony in the prior state action was immunized by California Corporations Code § 25531(e). He also claimed that his testimony was compelled by the threat of contempt when the receiver requested and obtained the order to show cause.

The district court denied Anderson's request for a *Kastigar* hearing. It held that Anderson's testimony was not immunized because § 25531(e) was not self-executing; moreover, the superior court did not order Anderson to testify over his asserted privilege claim.[3] Instead, the court found that once court proceedings were instituted to compel his testimony, Anderson waived his fifth amendment privilege through his counsel's June 1, 1987 letter.

Anderson appeals the district court's denial of the *Kastigar* hearing.

## II.

## A. STANDARD OF REVIEW

■■■ We review the district court's refusal to hold a *Kastigar* hearing for abuse of discretion. *United States v. Dudden*, 65 F.3d 1461, 1468 (9th Cir.1995).[4] However, we must determine *de novo* whether Anderson's testimony and production were immunized pursuant to a state statute. *See*

*Arizona Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d 988 (9th Cir.1995) ("We review the district court's interpretation of state law de novo."). We also review *de novo* whether Anderson's waiver of the fifth amendment privilege was compelled. *See United States v. Huynh*, 60 F.3d 1386, 1387 (9th Cir.1995) (whether *Miranda* waiver was voluntary is reviewed *de novo*); *United States v. Camp*, 72 F.3d 759, 761 (9th Cir.1995) (reviewing whether under the totality of the circumstances a state immunity agreement compelled self-incrimination).

## B. ANDERSON'S MOTION FOR A *KASTIGAR* HEARING

Anderson contends that the district court erred in failing to grant his motion for a *Kastigar* hearing; he argues that, because his testimony in the state proceeding was either immunized or compelled over his fifth amendment objections, the government was required to demonstrate that the evidence it intended to introduce at trial was not tainted by exposure to his prior testimony and production of documents. The government, on the other hand, claims that Anderson failed to meet his initial burden of showing that his testimony was compelled by a grant of immunity or otherwise. Rather, the government contends that Anderson explicitly waived his fifth amendment rights in the letter his counsel sent on June 1, 1987. For the following reasons, we hold that (1) Anderson waived his fifth amendment privilege and (2) this waiver was not compelled by a grant of immunity or by the threat of contempt.

■■■ To begin our discussion, we note that Anderson premises his alleged entitlement to a *Kastigar* hearing on two distinct fifth amendment claims. First, he argues that his prior testimony and production were immunized by state statute, and thus under *Kastigar v. United States*, 406 U.S. 441, 92

---

2. Anderson initially pleaded guilty to two counts of mail fraud; Anderson appealed and we vacated his conviction and remanded to the district court on grounds unrelated to this appeal.

3. The court also held that the stipulated order did not compel Anderson's testimony pursuant to § 25531(e), but simply enforced the parties' stipulation.

4. When a *Kastigar* hearing is held, we review the district court's factual findings regarding the prosecution's independent source for information for clear error. *See, e.g., United States v. Mapelli*, 971 F.2d 284, 288 (9th Cir.1992).

S.Ct. 1653, 32 L.Ed.2d 212 (1972) and *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), could not be used either directly or derivatively in his subsequent prosecution.[5] In order to obtain a *Kastigar* hearing based upon a claim that prior testimony was immunized, a defendant simply must demonstrate that his or her prior testimony was compelled by a grant of immunity. *Dudden,* 65 F.3d at 1468–69.[6] "Once the defendant has testified under a grant of statutory immunity, the government has the burden to prove that any evidence it intends to use against the defendant is derived from a legitimate source independent of the immunized statements." *Id.*

■ Second, Anderson contends that, absent immunity, his waiver (and therefore his testimony and production) were compelled by a threat of contempt, thus violating his fifth amendment privilege and, again, entitling him to a *Kastigar* hearing. The fifth amendment "protects against the use of compelled statements as well as guarantees the right to remain silent absent immunity." *Garner v. United States,* 424 U.S. 648, 653, 96 S.Ct. 1178, 1182, 47 L.Ed.2d 370 (1976). Accordingly, where a state "compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered, that testimony is obtained in violation of the Fifth Amendment." *Lefkowitz v. Cunningham,* 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977); *see also Camp,* 72 F.3d

at 761 (" '[C]ertain cruel choices, and choices made in highly coercive circumstances, are proscribed by the fifth amendment even though the state, strictly speaking, does not compel an incriminating statement.' "); *United States v. Koon,* 34 F.3d 1416, 1431 (9th Cir.1994) (police officers who invoked their fifth amendment privilege but subsequently made statements under threat of removal from office were compelled to make the statements in violation of the fifth amendment), *cert. granted in part on other grounds,* —— U.S. ——, 116 S.Ct. 39, 132 L.Ed.2d 920 (1995).

■ Thus, whether or not the defendant waived or failed to assert his or her fifth amendment privilege does not necessarily end the inquiry into an asserted fifth amendment violation. *See Garner,* 424 U.S. at 653, 96 S.Ct. at 1182 ("[T]he inquiry in a Fifth Amendment case is not ended when an incriminating statement is made in lieu of a claim of privilege."). "The test is whether, considering the totality of the circumstances, the free will of the witness was overborne." *United States v. Washington,* 431 U.S. 181, 188, 97 S.Ct. 1814, 1819, 52 L.Ed.2d 238 (1977); *see also Camp,* 72 F.3d at 761 (accord). If a defendant's statements were compelled in violation of the fifth amendment, he is entitled to a *Kastigar* hearing, in which the government must demonstrate "that the evidence it intends to introduce in a

---

**5.** In *Murphy v. Waterfront Commission,* the Supreme Court held that under the fifth amendment, "a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials in connection with a criminal prosecution against him." 378 U.S. at 79, 84 S.Ct. at 1609–10. Thus, ·the court held that "[o]nce a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence." *Id.* at 79 n. 18, 84 S.Ct. at 1609 n. 18.

In *Kastigar,* the Supreme Court, relying upon *Murphy,* held that the "use and derivative use" immunity provided by the federal immunity statute (as opposed to transactional immunity) was coextensive with the fifth amendment privilege;

therefore, compelling a witness to testify pursuant to a grant of use immunity did not violate the witness' fifth amendment rights. 406 U.S. at 460–61, 92 S.Ct. at 1664–65. Moreover, the court held that to protect the fifth amendment privilege, a defendant "need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all evidence it proposes to use was derived from legitimate, independent sources." *Id.* at 461–62, 92 S.Ct. at 1665.

**6.** *See also Kastigar,* 406 U.S. at 460, 92 S.Ct. at 1665 (compelled testimony pursuant to federal grant of use immunity may not be used in federal prosecution); *Murphy v. Waterfront Comm'n,* 378 U.S. at 79 n. 18, 84 S.Ct. at 1609 n. 18 (testimony compelled by state grant of immunity may not be used in federal prosecution); *Camp,* 72 F.3d at 761 (testimony pursuant to state immunity agreements not compelled under totality of the circumstances and therefore could be used in federal prosecution).

subsequent criminal proceeding is not tainted by exposure to the compelled statements." *Koon,* 34 F.3d at 1431.

With this framework in mind, we turn now to the parties' arguments.

### 1. *Waiver of the fifth amendment privilege against self-incrimination.*

▆▆▆ To begin, the government argues that the June 1, 1987 letter from Anderson's counsel waived Anderson's fifth amendment privilege against self-incrimination. "The fifth amendment privilege is not ordinarily self-executing and must be affirmatively claimed by a person whenever self-incrimination is threatened." *United States v. Jenkins,* 785 F.2d 1387, 1393 (9th Cir.1986) (citing *Minnesota v. Murphy,* 465 U.S. 420, 429, 104 S.Ct. 1136, 1143, 79 L.Ed.2d 409 (1984)); *see also United States v. Unruh,* 855 F.2d 1363, 1374 (9th Cir.1987) ("The defendant's failure to invoke the privilege against self-incrimination waives a later claim of privilege."), *cert. denied,* 488 U.S. 974, 109 S.Ct. 513, 102 L.Ed.2d 548 (1988). Moreover, "[a]n individual may lose the benefit of the privilege inadvertently, without a knowing and intelligent waiver." *Jenkins,* 785 F.2d at 1393 (citing *Garner,* 424 U.S. at 654 n. 9, 96 S.Ct. at 1182 n. 9); *see also United States v. Wagner,* 834 F.2d 1474, 1483 (9th Cir.1987) (trial judge has no duty to inquire whether waiver was knowing and voluntary).

Here, Anderson did not simply fail to assert his privilege; he explicitly stated through counsel that he waived the assertion of his fifth amendment rights. After initially claiming his fifth amendment privilege against self-incrimination in response to the document subpoenas and most questions at his deposition, the June 1, 1987 letter from Anderson's counsel stated:

> Specifically, this is to confirm that after considering all of the various implications of doing so, *Mr. Anderson has agreed to waive his fifth amendment privilege with respect to testimony and production of documents in the above-referenced matter.* He is, therefore, willing to produce documents and to submit to his deposition in this matter *without asserting the fifth amendment privilege.*
>
> \*       \*       \*       \*       \*       \*
>
> As both Mr. Anderson and I have communicated to you repeatedly in the past, we are anxious to cooperate with the receiver in this matter and to attempt to reach some resolution of it at the earliest possible date. *This offer to waive the fifth amendment privilege is made pursuant to that desire.* (Emphasis added.)

Subsequently, Anderson signed a stipulation in which he agreed to attend a second deposition and to comply with the document subpoenas. Moreover, he then testified and produced documents without asserting his fifth amendment privilege as promised in his counsel's letter.[7] We have no difficulty concluding that in so doing Anderson waived his fifth amendment privilege against self-incrimination.[8] Nevertheless, Anderson contends that the waiver was compelled either by the automatic grant of immunity pursuant to California Corporations Code § 25531(e) or by the order to show cause regarding contempt of the preliminary injunction order. For the following reasons, we disagree.

### 2. *Immunity pursuant to California Corporations Code § 25531(e).*

Anderson contends that he agreed not to assert his fifth amendment privilege against

---

7. We need not address whether the letter alone-a promise to waive the fifth amendment privilege-would be sufficient to constitute a waiver. *Cf. Tennenbaum v. Deloitte & Touche,* 77 F.3d 337 (9th Cir.1996) (written promise to waive attorney client privilege absent actual disclosure of privileged information did not constitute a waiver of the privilege). Here, Anderson not only promised to waive the privilege against self-incrimination but also did in fact testify and produce documents without asserting the privilege.

8. We note that Anderson does not seriously contest this. Anderson does argue that a waiver should not be "lightly inferred" when the privilege has been specifically asserted. Here, however, Anderson's waiver need not be "inferred" at all. Anderson states three times that he is waiving the privilege and explains he is doing so after fully considering the implications. *Cf. Smith v. United States,* 337 U.S. 137, 150–51, 69 S.Ct. 1000, 1007, 93 L.Ed. 1264 (1949) (waiver will not be lightly inferred from ambiguous answer to question, where defendant clearly claimed privilege during the proceeding).

self-incrimination because Corporations Code § 25531(e) compelled him to testify and produce the subpoenaed documents, thereby automatically granting him immunity concerning the compelled testimony and production of documents.[9] Anderson, however, misconstrues the statutory framework for compelling compliance with administrative subpoenas and, thus, the manner in which Corporations Code § 25531(e) authorizes the grant of immunity in exchange for compelled testimony.

To begin, the commissioner (or his or her designated officer) may, during the course of investigations, subpoena witnesses and require the production of documents under parallel statutory provisions: Corporations Code § 25531(a) & (c) and Government Code §§ 11180 and 11181. *See People v. Pappalardo,* 12 Cal.App.4th 1723, 1727, 16 Cal. Rptr.2d 512, *review denied,* (1993). If a person refuses to obey a subpoena, the commissioner is authorized under both Corporations Code § 25531(d)[10] and Government Code §§ 11186–88[11] to apply to the superior court and obtain an order compelling compliance with the subpoena. *See Pappalardo,* 12 Cal. App.4th at 1729–30, 16 Cal.Rptr.2d 512 (not-

ing overlapping statutory provisions for securing enforcement orders for subpoenas issued by commissioner); *Barnes v. Molino,* 103 Cal.App.3d 46, 50, 162 Cal.Rptr. 786 (1980) (sections 11187 and 11188 provide for "securing enforcement orders" from superior court).

In order to enforce a subpoena under § 11187, the designated officer must file a petition in superior court that sets forth specific facts concerning lack of compliance with the subpoena. *See supra* note 10. Once the petition is filed, the court *must* enter "an order directing the person to appear before the court at a specified time and place and then and there show cause why he has not attended or testified or produced the papers as required." Cal. Gov't Code § 11188. Further, "[i]f it appears to the court that the subpoena was regularly issued by the head of the department, the court shall enter an order that the person appear before the officer named in the subpoena at the time and place fixed in the order and testify or produce the required papers." *Id.* Lastly, "[u]pon failure to obey the order, the person shall be dealt with as for contempt of court." *Id.; Brovelli*

9. Section 25531(e) provides:

No person is excused from attending and testifying or from producing any document or record before the commissioner or any officer designated by him, or in any proceeding instituted by the commissioner, on the ground that the testimony or evidence (documentary or otherwise) required of him may tend to incriminate him or subject him to a penalty or forfeiture; but no individual may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing *concerning which he is compelled, after validly claiming his privilege against self-incrimination, to testify or produce evidence* (documentary or otherwise), except that the individual testifying is not exempt from prosecution and punishment for perjury or contempt committed in testifying.

Cal. Corp.Code § 25531(e) (emphasis supplied).

10. Section 25531(d) states:

In case of contumacy by, or refusal to obey a subpoena issued to, any person, the superior court, upon application by the commissioner, may issue to the person an order requiring him to appear before the commissioner, or the officer designated by him, there to produce documentary evidence, if so ordered, or the give evidence touching the matter under investiga-

tion or in question. Failure to obey the order of the court may be punished by the court as a contempt.

Cal. Corp.Code § 25531(d).

11. Section 11186 grants the superior court jurisdiction to, *inter alia,* compel the attendance of witnesses. *See* Cal. Gov't Code § 11186. In addition, § 11187 provides in part:

If any witness refuses to attend or testify or produce any papers required by such subpoena the head of the department may petition the superior court in the county in which the hearing is pending for an order compelling the person to attend and testify or produce the papers required by the subpoena before the officer named in the subpoena.

Cal. Gov't Code § 11187. Further, the petition must set forth:

(a) Due notice of the time and place of attendance of the person or the production of the papers has been given. (b) The person has been subpoenaed in the manner prescribed in this article. (c) He has failed and refused to attend or produce the papers required by subpoena before the officer in the cause or proceeding named in the subpoena, or has refused to answer questions propounded to him in the course of the instigation or hearing.

*Id.*

*v. Superior Court,* 56 Cal.2d 524, 527, 15 Cal.Rptr. 630, 364 P.2d 462 (1961).

Nevertheless, in utilizing its subpoena powers, the commissioner " 'cannot compel the production of evidence in disregard of the privilege against self-incrimination.' " *Barnes,* 103 Cal.App.3d at 52, 162 Cal.Rptr. 786 (quoting *Brovelli,* 56 Cal.2d at 529, 15 Cal.Rptr. 630, 364 P.2d 462); *see also Pappalardo,* 12 Cal.App.4th at 1730, 16 Cal.Rptr.2d 512. Only the superior court can compel testimony over a valid claim of privilege. "If a valid claim of privilege exists, the court may still compel the witness to answer questions 'inasmuch as by doing so [the witness] would receive a statutory grant of immunity pursuant to Corporations Code section 25531(e).' " *Pappalardo,* 12 Cal.App.4th at 1730, 16 Cal.Rptr.2d 512 (quoting *Barnes,* 103 Cal.App.3d at 56, 162 Cal.Rptr. 786).

Thus, Corporations Code § 25531(e) "grants immunity to a party who 'after validly claiming his privilege' has been compelled to produce evidence or testify." *People v. Skelton,* 109 Cal.App.3d 691, 710, 167 Cal. Rptr. 636 (1980) (quoting *People v. King,* 66 Cal.2d 633, 642, 58 Cal.Rptr. 571, 427 P.2d 171 (1967) and holding that a defendant who cooperated with authorities without claiming privilege cannot claim immunity under § 25531(e)), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1361, 67 L.Ed.2d 343 (1981). "The statute clearly requires the privilege be claimed if immunity is to be obtained." *Id.* at 710, 167 Cal.Rptr. 636.

■ Anderson claims that he fulfilled this standard because he initially asserted the privilege and subsequently was compelled to testify. We disagree. First, Anderson was not compelled *by the court* under § 25531(e) to comply with the subpoenas. To the contrary, as we discussed above, once the order to show cause issued, Anderson agreed not to assert the privilege and stipulated that he would comply with the subpoenas in exchange for taking the order to show cause hearing off calendar. Anderson thus waived

his fifth amendment privilege before a hearing could be held to determine the validity of his privilege claim, and, consequently, before Anderson could be compelled by the superior court to comply with the subpoenas over a valid claim of privilege. Section 25531(e) therefore never became applicable.

Second, the above statutory framework did not function "automatically," as Anderson argues, both to compel his testimony and to grant him immunity absent a court order. Anderson contends that, once the receiver filed a declaration with the court requesting an order to show cause and the order to show cause was issued by the court, the court was required by § 11188 to order him to comply with the subpoenas. Had he continued to assert the privilege after being ordered to comply with the subpoenas, he claims he would have been found in contempt under § 11188. Accordingly, he argues that his waiver was "compelled, after validly claiming his privilege against self-incrimination," within the meaning of § 25531(e), thereby entitling him immunity under that section.

This argument, however, ignores the fact that Anderson could not have been found in contempt until the superior court ruled upon his claim of privilege. Because the court did not rule on his claim, he was not "compelled" to testify within the meaning of § 25531(e). Section 25531(e) only grants immunity to witnesses who are compelled by the superior court to testify *after* it determines that the privilege claim is valid.[12]

In sum, we hold that Anderson was not compelled by the superior court to testify and produce documents over his claim of privilege. In addition, we conclude that § 25531(e) does not "automatically" compel witnesses (such as Anderson) to waive the fifth amendment privilege, thereby "automatically" granting the witness immunity. Rather, § 25531(e) requires that a superior court order a witness to testify *after* the court has considered the witness' valid privilege claim,

---

**12.** Anderson also claims that the court did order him to comply with the subpoenas by signing the stipulated order filed July 1, 1987. Again, this argument ignores the fact that Anderson *agreed* to comply with the subpoenas by signing the

stipulation himself. Thus, the court did not compel his testimony pursuant to § 25531(e) *over* a continued assertion of his fifth amendment privilege by signing the stipulated order.

**1530**

in order for the witness to obtain immunity pursuant to that section. For these reasons, we hold that Anderson did not testify pursuant to a grant of immunity under § 25531(e).

3. *Violation of the fifth amendment through a waiver compelled by the threat of contempt.*

Anderson also claims that, because the receiver filed a declaration requesting the issuance of an order to show cause and the court issued the order to show cause, he was facing the threat of contempt if he continued to assert the privilege against self-incrimination. Thus, he contends that he was compelled to choose between waiving the privilege and being found in contempt under Government Code § 11188. This choice, he argues, violated his fifth amendment privilege and therefore rendered his waiver invalid.[13] We reject this argument as well.

Anderson is correct in noting that "[t]he general rule that the privilege must be claimed when self-incrimination is threatened has [ ] been deemed inapplicable in cases where the assertion of the privilege is penalized so as to 'foreclos[e] a free choice to remain silent, and ... compe[l] ... incriminating testimony.'" *Minnesota v. Murphy,* 465 U.S. at 434, 104 S.Ct. at 1146 (quoting *Garner,* 424 U.S. at 661, 96 S.Ct. at 1186); *see also Camp,* 72 F.3d at 761; *Koon,* 34 F.3d at 1431. " '[A] witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defen-

dant. Absent such protection, if he is nevertheless compelled to answer, his answers are inadmissible against him in a later criminal prosecution.' " *Garner,* 424 U.S. at 653, 96 S.Ct. at 1181 (citations omitted). On the other hand, "[t]he fifth amendment privilege 'proscribes only self-incrimination obtained by a "genuine compulsion of testimony." ' " *United States v. Swacker,* 628 F.2d 1250, 1252 (9th Cir.1980) (quoting *Washington,* 431 U.S. at 187, 97 S.Ct. at 1818); *see also Camp,* 72 F.3d at 761 (" '[T]he Fifth Amendment is limited to prohibiting the use of physical or moral compulsion exerted on the person asserting the privilege.' ").

Thus, as we noted above, where a state "compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered, that testimony is obtained in violation of the Fifth Amendment." *Lefkowitz v. Cunningham,* 431 U.S. at 805, 97 S.Ct. at 2135 (statute requiring forfeiture of political party office for failure to testify before grand jury invalid).[14] "The test is whether, considering the totality of the circumstances, the free will of the witness was overborne." *Washington,* 431 U.S. at 188, 97 S.Ct. at 1819; *see also Camp,* 72 F.3d at 761 (accord).

Relying upon this line of authority, Anderson argues that the threat of contempt due to the superior court's issuance of an order to show cause placed him in the same position as the defendants in *Murphy v. Waterfront Commission,* forcing him to choose between the sanction of contempt and the waiver of his fifth amendment privilege. *See Murphy v. Waterfront Comm'n,* 378 U.S. at

---

**13.** We discussed above Anderson's claim that the threat of contempt compelled him to testify within the meaning of § 25531(e) and thus his testimony was immunized by the terms of that section. Here, on the other hand, Anderson argues that the threat of contempt violated his fifth amendment privilege and thus rendered his waiver invalid.

**14.** *See also Garrity v. New Jersey,* 385 U.S. 493, 498–500, 87 S.Ct. 616, 619–20, 17 L.Ed.2d 562 (1967) (testimony of police officers was involuntary where they were told they would lose their job if they asserted the privilege); *Koon,* 34 F.3d at 1431 (where police officers invoke their fifth amendment rights and subsequently make a statement under threat of removal from office the

statement is compelled). On the other hand, "[t]he constitution does not prohibit every element which influences a criminal suspect to make incriminating admissions." *Washington,* 431 U.S. at 187, 97 S.Ct. at 1819 (holding that obligation to testify before grand jury, after being warned of a right to remain silent, cannot constitute compulsion); *Jenkins,* 785 F.2d at 1393 (compulsion must consist of more than the obligation to appear and testify pursuant to a subpoena); *see also Minnesota v. Murphy,* 465 U.S. at 434–39, 104 S.Ct. at 1146–48 (probation conditions which required probationer to testify concerning matters relevant to his probation status did not equate with threatening revocation of probation if probationer invoked the privilege).

79–80, 84 S.Ct. at 1609–10 (reversing contempt finding where defendants were granted state immunity but continued to refuse to testify due to fear of federal prosecution). Again, however, Anderson's argument is premised upon an incorrect interpretation of the relevant California statutes.

Under the statutory framework provided for compelling compliance with an administrative subpoena, Anderson was not forced to choose between being held in contempt and waiving his fifth amendment privilege. Anderson concedes that the commissioner did not have the authority to compel Anderson's testimony; he also admits that his privilege claim had yet to be evaluated by the superior court.[15] In fact, at the preliminary injunction hearing, the court noted that it would consider any privilege claim when and if it arose. Moreover, Anderson acknowledges that he would not have been held in contempt under § 11188 until *after* the court ordered him to comply with the subpoenas and he failed to do so.

Anderson's argument is thus reduced to an assertion that this two-step process-ordering his compliance with the subpoenas that were properly issued and subsequently finding him in contempt-was "automatic" or "inevitable" under § 11188. As we discuss above, this is incorrect. California courts have held that the statutory enforcement scheme permits the person subpoenaed to assert the privilege either at the § 11188 hearing or at a subsequent hearing. *See, e.g., Barnes*, 103 Cal. App.3d at 56, 162 Cal.Rptr. 786. It is only after the court compels the person's testimony *over* that assertion-thus obtaining immunity pursuant to § 25531(e)-that the person could be adjudged in contempt.[16]

In sum, Anderson could not have been adjudged in contempt under the statutory scheme for enforcing administrative subpoenas if he made a valid and timely assertion of the privilege, *until* the court considered the privilege claim and either rejected the validity of the claim or compelled him to testify in spite of it. Instead of testing the validity of his privilege assertion, Anderson agreed to waive the privilege and comply with the receiver's subpoenas. Under these circumstances, Anderson was not compelled to testify under the threat of contempt and therefore his fifth amendment waiver was voluntary.

### III.

For the foregoing reasons, we agree with the district court that Anderson's testimony and production of documents in the state proceeding were not immunized or compelled in violation of the fifth amendment. Therefore, we AFFIRM the district court's denial of the motion for a *Kastigar* hearing.

---

**15.** Anderson argues in his reply that the superior court implicitly ruled against his privilege claim by signing the stipulated order. We reject this contention because (1) Anderson had ceased to assert his privilege claim at that point and (2) *nothing* in the stipulated order addresses Anderson's privilege assertion. Similarly, Anderson's argument that the court should have raised the issue itself *if it were not ruling on the claim* is incorrect. It is Anderson's responsibility to claim the privilege, not the court's. *See Wagner*, 834 F.2d at 1483 (" '[I]t is primarily the responsibility of defendant's counsel, not the trial judge, to advise the defendant of whether or not to testify.' ").

**16.** Anderson's claim is thus similar to that rejected by the Supreme Court in *Garner*. There, the Supreme Court held that the possibility of a prosecution for failure to file a tax return was not a penalty that compelled the taxpayer to waive the privilege against self-incrimination, because a valid and timely claim of the privilege barred such a prosecution. *Garner*, 424 U.S. at 661–62, 96 S.Ct. at 1185–86. Therefore, the court rejected Garner's argument that there must be a procedure for testing the validity of the asserted privilege prior to subjecting him to the possibility of prosecution for failure to file a return. *Id.*