Filed 1/13/15  In re D.V. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re D.V., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Appellant,<br><br>                v.<br><br>D.V.,<br><br>        Defendant and Respondent. | F068153<br><br>(Super. Ct. No. 13CEJ600334-1A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Timothy Alan Kams, Judge.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Larenda R. Delaini, Deputy Attorneys General, for Plaintiff and Appellant.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Respondent.

-ooOoo-

## *INTRODUCTION*

The People appeal from an order dismissing, with prejudice, a juvenile wardship petition (Welf. & Inst. Code, § 602, subd. (a)), which charged D.V. (the minor) with soliciting his mother, M.V. (mother), to commit and join in the commission of the murder of the minor's father, P.G. (father), and stepmother, M.G. (stepmother), in violation of Penal Code,[1] section 653f, subdivision (b).

On appeal, the People contend the juvenile court erred in denying the People's request to grant father and stepmother use immunity and compel their testimony under section 1324, after they invoked their Fifth Amendment privilege against self-incrimination during a pretrial hearing on the minor's motion to exclude evidence of recordings of incriminating telephone conversations between the minor and mother on the ground they were secretly intercepted and recorded by father and stepmother in violation of state and federal law.

We conclude the court's denial of the People's request to grant use immunity to father and stepmother was premised on an incorrect legal assumption that a grant of immunity would not adequately protect the witnesses' Fifth Amendment privilege against self-incrimination because their compelled testimony in this case could subject them to later criminal prosecution in federal court. We will therefore reverse the court's order dismissing the petition and remand the matter with directions to reinstate the petition and conduct further proceedings consistent with the views expressed in this opinion.

## *PROCEDURAL BACKGROUND*

On August 6, 2013, the Fresno County District Attorney filed a juvenile wardship petition charging the then 14-year-old minor with two counts of solicitation of murder.

On August 19, 2013, the minor filed a motion to suppress the recordings of his telephone conversations with mother. Because the recordings were made by private

---

[1] Further statutory references are to the Penal Code unless otherwise specified.

2

parties, not state actors, the juvenile court agreed with the People that the facts asserted by the minor did not support a Fourth Amendment violation and were not properly the subject of a motion to suppress evidence under Welfare and Institutions Code section 700.1 or section 1538.5. Consequently, the court deemed the minor's suppression motion to be an in limine motion to exclude evidence and set it for hearing under Evidence Code section 402.

At the Evidence Code section 402 hearing on September 17, 2013, the People called father to testify. After the prosecutor asked father a few questions about the challenged recordings, the juvenile court interrupted and appointed two defense attorneys to consult with father and stepmother regarding potential issues of self-incrimination. After consulting with the defense attorneys and their family law attorney, father and stepmother invoked their Fifth Amendment privilege against self-incrimination and declined to testify further in the proceedings.

The juvenile court continued the hearing to give the prosecutor an opportunity to confer with her office about seeking immunity to compel father and stepmother's testimony. When the hearing resumed the following morning, the court observed that it had received the People's petition to grant use immunity to father and stepmother under section 1324, and a letter from a senior attorney at the United States Attorney's office in their district, which essentially expressed the office's current lack of interest in prosecuting father and stepmother for recording telephone conversations between the minor and mother.

After engaging in an extensive discussion with counsel, the juvenile court denied the prosecutor's request to grant use immunity and "decline[d] to make an order requiring that the father or stepmother testify in these proceedings." The court explained:

"The most compelling argument of those I think is the issue of the federal prosecution. This letter doesn't—assuming, and I note the objection under hearsay which is valid, one, it's not under penalty of perjury; but two, the substance of it is what's the most troubling. It's not an agreement to forego

3

prosecution. It's simply an expression of their disinterest in prosecuting. That doesn't go very far as far as I'm concerned. So based on the letter from the U.S. Attorney's Office, I think the provision of [section] 1324 are applicable in that there is still the prospect of these folks, father and stepmother, being prosecuted in another jurisdiction, and there would be nothing I could do under this grant of immunity to forego that and to protect them from a new prosecutor in the federal system where a federal judge might think otherwise."

The juvenile court next granted the minor's motion to strike father's brief testimony preceding his invocation of his Fifth Amendment privilege against self-incrimination. After the prosecutor advised the court the People were unable to proceed in light of the court's ruling denying use immunity to father and stepmother, the court granted the minor's motion to dismiss the petition with prejudice.

On October 7, 2013, the People filed a timely notice of appeal from "[a]ll findings and rulings resulting in the court's dismissal of the action on September 18, 2013." The notice of appeal specified that the order appealed from was "[a]n order or judgment dismissing or otherwise terminating the action pursuant to subdivision (4) of paragraph (b) of Welfare and Institutions Code section 800."

### *DISCUSSION*

The People contend the juvenile court erred in denying their request to compel the testimony of father and stepmother by granting them use immunity under section 1324. As a preliminary matter, we reject the minor's claim that the People forfeited their right to challenge the order dismissing the juvenile wardship petition by failing to make a specific objection to the dismissal of the petition with prejudice.

Before the juvenile court granted the minor's request to dismiss the petition with prejudice, the prosecutor expressly advised the court that the People were *not* moving to dismiss the petition but simply were unable to proceed due to the court's ruling denying the People's request to grant use immunity to father and stepmother. The People properly challenged this ruling by filing a timely appeal from the order dismissing the petition.

4

It is undisputed that the minor was not placed in jeopardy prior to the dismissal of the petition. Therefore, his appeal is authorized by Welfare and Institutions Code section 800, subdivision (b)(4), which provides that the People may appeal an order or judgment dismissing a juvenile wardship petition before the juvenile has been placed in jeopardy. (See, e.g., *In re Ricardo C.* (1995) 37 Cal.App.4th 431, 436-437 [In enacting Welf. & Inst. Code, § 800, subd. (b)(4), the Legislature clearly intended the People to have the right to appeal dismissal orders or judgments, including dismissals premised on pretrial evidentiary rulings].) No more was required to preserve for appellate review the People's current challenge to the court's ruling denying use immunity to father and stepmother, which effectively precluded the prosecution from calling as witnesses the alleged victims of the charged crimes.[2]

Turning to the question of whether the juvenile court erred in denying the People's request to grant use immunity to father and stepmother under section 1324, we initially observe the court proceeded correctly by interrupting father's testimony at the Evidence Code section 402 hearing and appointing counsel to consult with father and stepmother on potential issues of self-incrimination which might arise from their testimony regarding the telephonic recordings at issue.[3] California Rules of Court, rule 5.548, which governs

---

[2]    Contrary to the minor's suggestion, there is no indication the juvenile court exercised its discretion to dismiss the petition with prejudice in "the interests of justice and the welfare of the [minor]" under Welfare and Institutions Code section 782. Rather, it appears the dismissal resulted directly from the People's stated inability to proceed with their case due to the denial of use immunity to father and stepmother. Citing the court's acceptance of father's reassurances that he wished the minor to be returned to his custody after the case was dismissed (instead of following the court's initial inclination to refer the matter to child protective services), the minor suggests renewal of the juvenile court proceedings will frustrate the interests of justice by undermining father's efforts to "heal their relationship." In concluding there is no evidence the court intended to exercise its discretion under Welfare and Institutions Code section 782, we express no opinion on whether dismissal of the reinstated petition would be appropriate under this provision and the minor is free to address to the juvenile court, on remand, his argument that dismissal would serve the interests of the justice.

[3]    Because the court ordered all of father's testimony stricken, we reject the minor's assertion—which is based on father's stricken testimony that he was the one who made the recordings of the minor's telephone conversations with mother—that the court did not err in

requests for immunity in juvenile delinquency cases, provides: "If a person is called as a witness and it appears to the court that the testimony or other evidence being sought may tend to incriminate the witness, the court must advise the witness of the privilege against self-incrimination and of the possible consequences of testifying." (Cal. Rules of Court, rule 5.548, subd. (a).)

The rule further provides: "In proceedings under [Welfare and Institutions Code] section 602, the prosecuting attorney may make a written or oral request on the record that the court order a witness to answer a question or produce evidence. The court must then proceed under … section 1324." (Cal. Rules of Court, rule 5.548, subd. (c).) Section 1324 provides, in relevant part:

> "In any felony proceeding … if a person refuses to answer a question or produce evidence of any other kind on the ground that he or she may be incriminated thereby, and if the district attorney … requests the court … to order that person to answer the question or produce the evidence, … *the court shall order the question answered or the evidence produced unless it finds that to do so* would be clearly contrary to the public interest, or *could subject the witness to a criminal prosecution in another jurisdiction,* and that person shall comply with the order." (Italics added.)[4]

---

denying use immunity to stepmother because she did not "physically record" the telephone conversations and therefore could not offer any relevant testimony at the hearing on the minor's in limine motion to exclude the recordings. Even if stepmother did not physically make the audio-recordings of the minor's telephone conversations, the court reasonably perceived her testimony on the subject could tend to incriminate her because the minor's motion to exclude the recordings alleged that stepmother listened to and transcribed the contents of the recordings, which she brought to the police department. The minor's motion also implied that stepmother eavesdropped on his telephone conversations with mother. Thus, the minor's motion alleged various forms of conduct by stepmother which could arguably subject her to criminal liability under the state and federal statutes cited by the minor. (See, e.g., 18 U.S.C. 2511; see also, § 632.)

[4] In its entirety, section 1324 provides: "In any felony proceeding or in any investigation or proceeding before a grand jury for any felony offense if a person refuses to answer a question or produce evidence of any other kind on the ground that he or she may be incriminated thereby, and if the district attorney of the county or any other prosecuting agency in writing requests the court, in and for that county, to order that person to answer the question or produce the evidence, a judge shall set a time for hearing and order the person to appear before the court and show cause, if any, why the question should not be answered or the evidence produced, and the court

Although a variety of concerns were addressed at the hearing on the People's petition to grant use immunity to father and stepmother under section 1324, the record clearly indicates the court based its ruling denying the People's request on the court's primary concern, which was that an order granting immunity to father and stepmother would not be binding on federal courts or prosecutors and therefore their compelled testimony in these proceedings could subject them to criminal prosecution in another jurisdiction within the meaning of section 1324. The court's concern for protecting the witnesses' Fifth Amendment privilege against self-incrimination was very commendable, but misplaced in this particular case because a grant of use immunity under section 1324 would have sufficed to protect the witnesses' Fifth Amendment rights as their immunized testimony in this case could not be used against them in any later criminal proceedings.

"Under California law, a witness may not be prosecuted for any act about which he or she was required by the district attorney to testify. (§ 1324.) In addition to broad transactional immunity, there is also 'use immunity'—'[i]mmunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom ....' [Citation.] Use immunity does not afford protection against prosecution, but merely prevents a prosecutor from using the immunized testimony against the witness. Use immunity provides sufficient protection to overcome a Fifth Amendment claim of

---

shall order the question answered or the evidence produced unless it finds that to do so would be clearly contrary to the public interest, or could subject the witness to a criminal prosecution in another jurisdiction, and that person shall comply with the order. After complying, and if, but for this section, he or she would have been privileged to withhold the answer given or the evidence produced by him or her, no testimony or other information compelled under the order or any information directly or indirectly derived from the testimony or other information may be used against the witness in any criminal case. But he or she may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering, or failing to answer, or in producing, or failing to produce, evidence in accordance with the order. Nothing in this section shall prohibit the district attorney or any other prosecuting agency from requesting an order granting use immunity or transactional immunity to a witness compelled to give testimony or produce evidence."

privilege.  Transactional immunity is not constitutionally required." (*People v. Cooke* (1993) 16 Cal.App.4th 1361, 1366.)

The United States Supreme Court in *Kastigar v. United States* (1972) 406 U.S. 441 (*Kastigar*), held that the scope of immunity granted under an immunity statute must be coextensive with the scope of the Fifth Amendment privilege against self-incrimination to justify supplanting the privilege and compelling a witness to testify. (*Kastigar*, at pp. 449, 459.)  The court held that immunity from use and derivative use affords the same protection as the privilege by assuring that the compelled testimony cannot lead to criminal penalties, and therefore is sufficient to compel testimony when a witness invokes the privilege.  (*Id.* at pp. 453, 461.)  The court further held that, once a defendant shows that his testimony on matters related to the present prosecution was compelled by a grant of immunity, the prosecution must show that the evidence it proposes to use was derived from sources wholly independent of the compelled testimony.  (*Id.* at p. 460.)  A hearing where the prosecution must show that its evidence was derived from independent sources is known as a *Kastigar* hearing.  (See, e.g., *U.S. v. Anderson* (9th Cir. 1996) 79 F.3d 1522, 1526.)

Applying these authorities here, the prosecutor was correct in arguing that a grant of use immunity under section 1324 is coextensive with the scope of the Fifth Amendment privilege against self-incrimination and therefore the juvenile court could order father and stepmother to testify under a grant of use immunity without violating their Fifth Amendment rights.  *Kastigar* teaches that, had such immunity been conferred, at any later prosecution of father or stepmother in connection with the telephonic recordings at issue, the prosecutor would be required to prove the evidence offered was not obtained or derived from father and stepmother's immunized testimony in the minor's adjudication.  In other words, although the witnesses could potentially face prosecution in federal court, as the juvenile court feared, the prosecution could not permissibly be based on testimony compelled from the witnesses under a grant of use immunity in this case.

8

Thus, the People correctly argued below that a federal court would be bound by the juvenile court's grant of use immunity in the sense that a federal court would be committing constitutional error if it were to permit the witnesses to be criminally prosecuted based on self-incriminating testimony they were compelled to give under the state immunity statute. The minor essentially concedes this point on appeal, but argues that the court's denial of use immunity to father was nonetheless proper based on the court's concern that immunity would not have protected father from having his testimony used against him in a later contempt proceeding for violating his family court order, which expressly prohibited father from recording the minor's telephone conversations with mother.

The record does not indicate that any concern regarding father's family law case ultimately factored into the juvenile court's ruling to deny the People's request to grant father use immunity. However, we agree with the People that the provision of section 1324 barring the use of immunized testimony in *any* criminal case would also apply in a contempt proceeding premised on a violation of father's family court order, which, as the People point out in their reply brief, provides that failure to obey the order shall be deemed a violation of various Penal Code sections which provide for criminal penalties. "A civil contempt proceeding is criminal in nature because of the penalties that may be imposed. [Citation.] Alleged contemners are entitled to most constitutional rights guaranteed to all criminally accused persons. [Citation.] Thus, an alleged contemner is entitled to the presumption of innocence until proven guilty 'beyond a reasonable doubt.' [Citation.] Fifth Amendment rights are similarly guaranteed." (*In re Witherspoon* (1984) 162 Cal.App.3d 1000, 1001-1002, fn. omitted.)

Because the record shows the juvenile court exercised its discretion to deny the People's request to grant use immunity to father and stepmother under section 1324 was based on an incorrect legal assumption that the witnesses' compelled testimony could be used against them in a later criminal prosecution in another jurisdiction, we agree with

9

the People that the court order dismissing the juvenile wardship petition should be reversed. (See *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435-436 [discretionary decision may be reversed if improper criteria were applied or incorrect legal assumptions were made].)

### *DISPOSITION*

The order dismissing the juvenile wardship petition with prejudice is reversed. The matter is remanded to the juvenile court with directions to reinstate the petition and conduct further proceedings consistent with the views expressed in this opinion.


_____

HILL, P. J.

WE CONCUR:


_____

LEVY, J.


_____

PEÑA, J.